Gilbert Wayne JONES, Appellant,

v.

UNITED STATES, Appellee.

No. 5271.

District of Columbia Court of Appeals.

Submitted March 22, 1971.

Decided May 10, 1971.

---

Ed Wilhite was on the brief for appellant.

Thomas A. Flannery, U. S. Atty., John A. Terry and John E. Drury, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

KERN, Associate Judge:

Appellant was convicted of assault and petit larceny after a trial by jury and received consecutive sentences of six months on each charge. He complains on appeal that his constitutional rights were violated for the reasons that his initial confrontation with the complaining witness occurred without counsel being present and under

such unnecessarily suggestive circumstances as to be conducive to irreparably mistaken identification. He further contends that since the Government failed to establish that complainant's identification of him at trial was *not* tainted by the initial impermissible confrontation the trial court erred in failing to exclude from consideration by the jury such in-court identification.

Complainant, a 65-year-old woman, went shopping at a Safeway store in mid-afternoon. As she entered she noticed a group of youths "standing around" in front of the store. When she was waiting in the check-out line with her purchases she observed them follow shoppers as they would leave the store. As she was walking away from the store, she saw some boys fall in behind her. When she rounded a corner, all but the "two big ones," one of whom was appellant, went in another direction. These two moved up rapidly behind her and she became alarmed. She turned around to face them at which time appellant "moved in front of her," and gave her purse several snatches, until one of its straps broke and it slipped off her arm. Appellant was tall, had dark brown skin, long hair with "little side locks" and was wearing green pants and a brown topcoat.

The complaining witness, after fruitlessly calling for help, set off in pursuit of appellant and his companion. They disappeared from her sight into an apartment complex. She walked a short distance before finding a police officer who was passing by on a motorcycle. She told him of the purse snatching and where appellant had run. He instructed her to remain where she was until a police car could pick her up and then he drove off. About an hour later, according to her estimate, a police car arrived and drove her to a place where appellant was seated in the back of another police car in handcuffs. She identified appellant as "the one that snatched my pocketbook." He had on green pants but no topcoat.

The arresting officers, who had appellant in custody when complainant made her identification, testified that they were on routine patrol when they received a radio call from a police officer who had followed certain "subjects" pointed out to him by a lady who had had her purse snatched. They arrived at the rear of 1140 North Capitol Street and found appellant with an officer. It was understood that they were all awaiting the complainant for a possible robbery identification, but when appellant became loud and abusive they placed him under arrest for disorderly conduct and took him outside the building and placed him in their squad car to avoid a crowd which the commotion had drawn. Complainant appeared within ten minutes of his arrest, saw appellant handcuffed and seated in the rear of the scout car, and identified him as the one who had snatched her purse.

It is quite apparent from the facts recited above that complainant's confrontation with appellant after the purse snatching was suggestive in view of his presence in the back seat of a police car in handcuffs. However, it has been recognized that there are benefits from an immediate on-the-scene confrontation, which counterbalance such suggestivity. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969). These benefits were summarized by the U. S. Court of Appeals recently in United States v. Washington, U.S.App.D.C. (No. 23,059, decided Dec. 28, 1970):

* * * [T]he quick confrontation permits the police to determine whether they have the actual offender and if not to continue their search for him and thus permit the prompt release of an innocent person. The ordinary on-the-scene confrontation also has great merit in that it operates at a time when the events and faces are fresh in mind and the accused ordinarily has no opportunity to change his clothing or personal appearance. All this is conducive to a high degree of accuracy in a form of identification that can at best be difficult when memories

have been blurred by the passage of time and alleged suspects drastically change their appearance. Certainly, identifications conducted on the scene may contain certain elements of suggestiveness but this point can be argued to the jury. * * (Slip op. at 8.)

*See also* United States v. Wilson, 435 F. 2d 403 (D.C.Cir., 1970).

██ In the instant case, the complaining witness initiated a search by the police of the area surrounding the place on the street where she was robbed almost as soon as the crime occurred. Somewhat more than an hour after her purse had been snatched she confronted appellant in the immediate vicinity. Her identification was positive, resulting from the vivid impression left with her by the experience she had undergone.[1] Her description of him to the police after the purse snatching had been reasonably detailed. We think that the advantages from this on-the-scene confrontation while memories were still fresh and as a reasonable part of a police investigation being conducted while the trail was still hot outweighed the inherently suggestive scene presented when the complainant arrived to identify appellant.

██ Appellant argues that so much time elapsed anyway between the crime and the identification that a trip to the station house for a lineup at which he could have had an attorney present would not have "significantly impaired the freshness" of the complaint's identification. We disagree. Whenever a prime suspect can be located at or near the scene of a crime as the result of an on-going, uninterrupted police search, we believe that both the public interest and the interests of justice are best served by an immediate confrontation. We think it is impossible to fix any precise time limit measured by a specific number of minutes from the commission of the

crime within which all on-the-scene confrontations must take place. In each case the critical issue is whether there was sufficient proximity of time and place between the offense and the confrontation. *See* Wise v. United States, 127 U.S.App.D.C. 279, 282, 383 F.2d 206, 209 (1967). Obviously, the longer the time elapsing between the crime and confrontation the greater the need of the police to justify their action. Here, we conclude that the police action was proper.

██ Appellant also points to the fact that he was already under arrest for a misdemeanor, disorderly conduct, when the complainant arrived to confront him and therefore he could not have been released on the spot, even if she had concluded that he was not the person who had snatched her purse. Thus, he argues, a reason justifying an on-the-scene confrontation, *i. e.,* that an innocent man might go his way without having to accompany police to the precinct for processing if cleared by the victim, was not present here. It seems clear to us upon the evidence that the police were interested in appellant because of his possible commission of a robbery. The disorderly charge grew out of his aggressive behavior when he was in custody for the purse snatching. It would be pure speculation to determine whether he would have been freed had complainant not identified him as the purse snatcher. Under the circumstances we think it was sound police work to conduct the confrontation at the scene in order to determine whether he was the robber, regardless of what ancillary criminal proceeding might develop out of the events leading up to the confrontation. The police had to know then whether they had the right suspect or must keep looking.

██ Finally, appellant calls our attention to several instances at the trial when the testimony of the complaining witness

---

1. Her testimony was:
I can't forget, and I never will forget that boy so long as I live. That is one day I'll never forget * * *.

 

was apparently inaccurate as to names and physical descriptions. These discrepancies, taken with the Government's lack of physical evidence of the crime and the testimony by appellant's alibi witnesses, constitute in his view further reason to conclude that her identification was mistaken and the result of the suggestive nature of the initial confrontation. This argument essentially goes to the issue of complainant's credibility which was persistently examined and ably presented to the jury by appellant's experienced trial counsel. *See* Stewart v. United States, 135 U.S.App.D.C. 274, 277–278, 418 F.2d 1110, 1113–1114 (1969). We cannot say as a matter of law that complainant's identification of appellant was mistaken and untrustworthy. The convictions must stand and the judgments are

Affirmed.