**Eric SINGLETARY and Maurice
Hardy, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 10839, 10862.**

District of Columbia Court of Appeals.

Argued Nov. 16, 1977.

Decided Feb. 24, 1978.

Frederick J. Sullivan, Bowie, Md., appointed by this court, for appellant Singletary.

Silas J. Wasserstrom, Public Defender Service, Washington, D. C., with whom Michael L. Fayad, Public Defender Service, Washington, D. C., was on the brief, for appellant Hardy.

Ann P. Gailis, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, YEAGLEY and FERREN, Associate Judges.

KERN, Associate Judge:

Appellants were each found guilty of two counts of armed robbery (D.C.Code 1973, §§ 22–2901, –3202), and one count of carrying a pistol without a license (D.C.Code 1973, § 22–3204). Appellant Singletary argues on appeal (1) that the pretrial showup and in-court identifications of appellants were impermissibly suggestive and should have been suppressed, and (2) that his motion for judgment of acquittal should have been granted because the evidence did not permit a finding of guilt beyond a reasonable doubt. Appellant Hardy raises different issues, contending (1) that the trial court erred when it refused to allow appellant to waive his right to be present during a hearing on a motion to suppress identification testimony, and (2) that it was prejudicial error for the trial court to deny appellant his right to recross-examine a complaining witness as to allegedly new and crucial matters which were brought out for the first time during redirect examination.

These convictions resulted from the robbery of two individuals, Moses Walker and Burnis Lee, in the early evening of March 20, 1975, in front of a liquor store on the corner of First and Q Streets, N.W., in Washington, D.C. Mr. Lee had gone into the store to buy beer. As Mr. Walker waited outside in his car, he was approached by a man in red pants who held a gun which was partially concealed in a plastic bag. The man pointed the gun at Walker and said: "Pops, this is a stick-up." A second man, who was taller than the first and who was dressed in dark clothes, went around the front of Walker's car, got into the passenger side, and began to go through Walker's pockets and the interior of the car.

At about this time, Mr. Lee emerged from the store. The man in red pants then approached him, with the gun covered with the plastic bag. The taller robber got out of Walker's car and went through Lee's pockets, netting a total of about $5.60 from the two men. According to the testimony of Mr. Walker, the taller man addressed his partner as "Maurice" three times during the crime. Both Lee and Walker testified that the area was well lit, and that they got a good look at the faces of the men.

As the assailants fled, Walker got out of his car and followed the two men, who disappeared into an alley. Walker then flagged down a police cruiser and reported the robbery. He pointed in the direction of Bates Street, toward which the men had gone, and gave the two policemen a brief description, including the fact that the assailants were two black males and that one had on red pants. As the police cruiser pulled away, Walker yelled at the officers that the man in red pants had a gun.[1]

The policemen proceeded in the direction indicated by Mr. Walker. As they turned into Bates Street, they saw two men who were heading east, in the same direction as Walker had told them the assailants had gone. According to police testimony, not more than three minutes had elapsed since the robbery had been reported, and these were the only persons on the block. When the two men realized a car was approaching, they crossed the street and doubled back toward the police car. As they did so, they passed behind a parked Cadillac, during which time the officers could not see their hands. One of the suspects was wearing red pants. The policemen ordered the men to stop in front of 72 Bates Street. They were frisked, but no weapon or money was recovered. They were then placed in

1. Mr. Walker testified that he told the policemen that he and his friend had just been robbed by two black men, one of whom was wearing red pants, a beige jacket, and a white skull cap, and the other of whom was tall and had on dark clothes. The police officer who testified at the suppression hearing recalled, however, being told only that there were two black men, one with red pants who had a gun.

the rear of the police cruiser and returned to the scene of the robbery, which was only about a block away.

One of the officers told Mr. Walker, "[W]e got two guys in the car similar to the ones you told us about." Walker then positively identified them as the robbers. When he did this, the man in dark clothes said: "I think you got your people mixed. . . . You better take a good look at us." Walker replied; "I taken a good look at you while you was robbing me, a very good look at you." Mr. Lee, who had not seen Walker make his identification, also positively identified the suspects.

Following the identifications, Walker asked the officers whether they had recovered the weapon. When they responded that they had not, he told them that the gun was in a plastic bag. The police then backtracked the escape route and found a gun in a plastic bag near the left rear wheel of the Cadillac which was parked in front of 72 Bates Street, about ten feet from where the suspects had been stopped.

I

■ Appellant Singletary contends on appeal that the pretrial showup identifications of him and subsequent in-court identifications made by the complaining witnesses were impermissibly suggestive[2] and were also fruits of an illegal arrest. Although a degree of suggestibility is inevitable in the context of every pretrial confrontation between a witness and a suspect, *United States v. Wade*, 388 U.S. 219, 235, 87 S.Ct. 81, 17 L.Ed.2d 53 (1967), a defendant is not denied due process of law unless, in the totality of the circumstances, the on-the-scene confrontation was unnecessarily suggestive and conducive to the substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188, 197–208, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States*, 390 U.S. 377, 384, 83 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18

L.Ed.2d 1199 (1967); *Clemons v. United States*, 133 U.S.App.D.C. 27, 38, 47, 408 F.2d 1230, 1241, 1250 (1968) (en banc), *cert. denied*, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). In considering the totality of the circumstances, an immediate on-the-scene confrontation has uniquely powerful indicia of reliability which more than counterbalance any suggestivity, absent special elements of unfairness. *Jones v. United States*, D.C.App., 277 A.2d 95, 97–98 (1971), *citing Russell v. United States*, 133 U.S. App.D.C. 77, 81, 408 F.2d 1280, 1284, *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *United States v. Washington*, 144 U.S.App.D.C. 338, 341–42, 447 F.2d 308, 311–12 (1970). *See United States v. Jones*, 170 U.S.App.D.C. 362, 365–66, 517 F.2d 176, 179–80 (1975). Furthermore, something more egregious than mere custodial status is required in order to establish such special unfairness. *See United States v. Hines*, 147 U.S.App.D.C. 249, 260, 455 F.2d 1317, 1328 (1971), *cert. denied*, 406 U.S. 969, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972).

■ When the instant case is evaluated in light of these principles, it is clear that there were no special elements of unfairness in the showup identifications of the appellants. Both complaining witnesses testified that the area of the offense was well lit and that they got a good look at the faces of the men. Appellants matched the description given by Mr. Walker and were apprehended within a few moments of the crime only a short distance from the place where it had occurred. When they were brought back to the complainants, one of the officers told Mr. Walker, "[W]e got two guys in the car similar to the ones you told us about." While these comments could have been phrased more neutrally, we do not find that they rendered the showup so suggestive as to give rise to a substantial likelihood of misidentification, where the victims had ample opportunity to observe the defendants during the crime and the showup followed the assault by only a few

**2.** This contention is essentially similar to appellants' pretrial motion to suppress certain identification testimony which was denied by the

trial court. Appellant Hardy does not join in challenging this ruling on appeal.

minutes. *See Washington v. United States,* D.C.App., 334 A.2d 185, 187 (1975) (detective told complainant that "we got your man, we think"). Although appellants were seated in a police car when they were identified, they were not handcuffed, and there was nothing in the situation beyond mere custodial status. *Jones v. United States, supra* at 97 (confrontation in which suspect was seated in back seat of police car in handcuffs, though suggestive, was permissible); *United States v. Lee,* 158 U.S. App.D.C. 296, 298, 485 F.2d 1075, 1077 (1973) (identification of defendant while he was lying face down on floor with his arms handcuffed behind his back was permissible where confrontation took place within a few minutes of robbery in close proximity to scene of crime). Moreover, the complainants viewed the suspects separately and each made prompt and positive identifications. In the totality of these circumstances, the showup confrontation between the defendants and the complaining witnesses cannot be considered unnecessarily suggestive.[3]

■ Appellant Singletary further argues that his identification was the result of illegal police conduct and was thus the fruit of an illegal arrest. In this case ap-

pellants were stopped within three minutes of the time the crime was reported, approximately a block from the scene of the incident. They were walking in the direction in which the robbers reportedly had fled and were the only persons on the street. Moreover, appellants were wearing clothes which precisely fit the description given by complainant Walker, including appellant Hardy's distinctive red pants, and their conduct upon seeing the police car in crossing the street and reversing the direction in which they were walking could under the circumstances have been considered suspicious. Thus, the trial court correctly held that the police had probable cause to detain the suspects in order to return them to the scene of the crime. *See Randall v. United States,* D.C.App., 353 A.2d 12, 13 (1976) (officers had probable cause to stop a suspect who acted suspiciously and who fit the description which they had been given, *viz.,* a Negro male wearing green pants); *United States v. Evans,* 141 U.S.App.D.C. 321, 331, 438 F.2d 162, 172 (Bazelon, J., dissenting on other grounds), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 21 L.Ed.2d 432 (1971).[4]

## II

Appellant Hardy's first contention on appeal is that the trial court erred when it

---

**3.** Appellant Singletary argues that subsequent in-court identifications by Walker and Lee were tainted by the suggestiveness of the showup and that, consequently, the in-court identifications should have been inadmissible. As we have noted above, the trial court was correct in ruling that the confrontation was not impermissibly suggestive. Furthermore, even if we had concluded that the confrontation had been unduly suggestive, an in-court identification may be found valid even though it was preceded by deficient pretrial confrontations. *Clemons v. United States, supra* 133 U.S.App.D.C. at 38, 408 F.2d at 1241. Here, the trial court found that an independent source existed for the identification—a conclusion which we find to be clearly substantiated by the record. Thus, this contention is without merit.

**4.** Appellant Singletary also contends that the trial court erred in denying his motion for judgment of acquittal. Such a motion must be granted if there is no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt. *Marshall v. United States,* D.C. App., 340 A.2d 805, 808 (1975); *Curley v. United States,* 81 U.S.App.D.C. 389, 392–93, 160

F.2d 229, 232–33, *cert. denied,* 331 U.S. 834, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). In considering the motion, the evidence must be viewed in the light most favorable to the government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Anderson v. United States,* D.C.App., 364 A.2d 143, 145 (1976), *citing United States v. Fench,* 152 U.S. App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed. 271 (1973); *Curley v. United States, supra. See In re W. K.,* D.C.App., 323 A.2d 442, 445 (1974); *United States v. Malinowski,* 347 F.2d 347, 351 (E.D.Pa.1972), *aff'd* 472 F.2d 850 (3d Cir.), *cert. denied,* 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973), *citing Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Feldman,* 425 F.2d 688, 692 (3rd Cir. 1970). As the preceding summary of the facts indicates, there was ample evidence in this record to warrant the trial court's submission of the case to the jury.

refused to allow him to waive his right to be present during the testimony of the complainant, Moses Walker, at a hearing before trial on the motion to suppress identification testimony.

At the motions hearing, Mr. Lee was the first witness. Before even being asked to do so by the prosecutor, he pointed to appellant Hardy as the man who had approached him with a gun. He also spontaneously identified appellant Singletary as the second assailant. He further testified that he recognized the men without difficulty by their faces and clothes, and that there was "[n]o doubt in my mind that they are the ones." ·

At the conclusion of Mr. Lee's testimony, counsel for appellant Hardy moved on behalf of her client to waive his presence during the testimony of the second complaining witness, Moses Walker. Counsel explained that appellant wished to avoid another confrontation during which the witnesses would have "a greater opportunity to familiarize themselves with the two defendants," which might enable the witnesses to make an inaccurately persuasive in-court identification before a jury. The motion was denied in the following colloquy:

> THE COURT: One of the purposes of this hearing is to see whether an identification [can be made]. You know when you file a frivolous motion, on its face it would appear to be a frivolous motion so far, that is one of the hazards of it. I've never permitted it yet. I know of no authority that requires a judge to play cat and mouse with a witness. Okay, bring in the next witness.
>
> COUNSEL FOR APPELLANT HARDY: May I have a ruling on my request, Your Honor?
>
> THE COURT: It is denied. If you have any authority that says I'm obligated to do it, if you can cite any case—

> COUNSEL: Not at this time, Your Honor.
>
> THE COURT: Well then, you should have had some authority.

Subsequently, Moses Walker was called as a witness. He testified that he had no difficulty at all in recognizing the suspects at the scene of the incident, and he identified them in the courtroom.

▬▬▬ Appellant asserts that he has a right to waive his presence at a hearing on a motion to suppress identification testimony in order to avoid a further unnecessarily suggestive confrontation, and that the court's ruling denying his request was prejudicial error which requires reversal of his conviction. It is well settled that a criminal defendant has a constitutional right to be *present* at critical stages of his prosecution, under the confrontation clause of the Sixth Amendment and the due process clause of the Fifth Amendment, whenever the presence of the defendant "bears, or may fairly be assumed to bear, a relation, reasonably substantial to his opportunity to defend." *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Moreover, the presence of the defendant is statutorily *required* "at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence . . . ." Super.Ct.Cr.R. 43.[5] The question presented in this case, however, is whether a defendant has a corresponding right, for tactical reasons, to *waive* his right to be present. We conclude that the defendant does have a right to waive his presence at a pretrial suppression hearing in a case such as this in which no legitimate interests of the government or of the defendant would have been prejudiced by the defendant's absence; however, on the record in this case reversal is not appropriate.

▬▬▬ Neither the Constitution nor Rule 43 can be interpreted to *require* a

---

**5.** This is the language of the rule which was in effect at the time of the hearing in this case. The local rule was amended on November 16, 1976, to require a defendant's presence additionally "at the time of the plea." The 1976 amendments did not substantially alter the rule but did bring it into conformity with the present version of Fed.R.Cr.P. 43. *See* Super. Ct.Cr.R. 43 & Comment.

defendant's presence at a pretrial suppression hearing. The Supreme Court early emphasized

> the distinction everywhere drawn between proceedings at the trial and those before and after. Many motions before trial are heard in the defendant's absence, and many motions after trial. . . [*Snyder v. Massachusetts, supra* at 107, 54 S.Ct. at 333].

Thus, it has been held that a defendant's presence is not required by the confrontation clause of the Sixth Amendment in order to aid counsel in cross-examination in proceedings which do not involve questions of guilt or innocence. *United States v. Makris*, 398 F.Supp. 507, 510 (S.D.Tex.1975), aff'd, 535 F.2d 899 (5th Cir.), *rehearing and rehearing en banc denied*, 540 F.2d 1086 (1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803, *reh. den.*, 431 U.S. 909, 97 S.Ct. 1707, 52 L.Ed.2d 394 (1977). *See McCray v. Illinois*, 386 U.S. 300, 305, 310, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Hayman*, 342 U.S. 205, 222, 72 S.Ct. 263, 96 L.Ed.2d 232 (1952); *Williams v. New York*, 337 U.S. 241, 245, 252, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Bell*, 464 F.2d 667, 670–71 (2d Cir.), *cert. denied*, 409 U.S. 991, 93 S.Ct. 335, 34 L.Ed.2d 258 (1972). Similarly, the notes of the Advisory Committee with respect to the federal rule indicate that the mandatory principle of Rule 43 "does not apply to hearing on motions made prior to or after trial." [6] Original (1946) Advisory Committee Note to Fed.R.Cr.P. 43, *citing United States v. Lynch*, 132 F.2d 111, 113 (3d Cir. 1942), *cert. denied*, 318 U.S. 777, 63 S.Ct. 831, 87 L.Ed. 1146 (1943). *See United States v. Gradsky*, 434 F.2d 880, 883 (5th Cir. 1970), *cert. denied sub nom., Roberts v. United States*, 401 U.S. 925, 91 S.Ct. 881, 27 L.Ed.2d 828 (1971) (an evidentiary suppression hearing is not a "critical stage" of the proceedings within Rule 43); *United States v. Makris, supra; United States v. Lockwood*, 382 F.Supp. 1111, 1116 (E.D.N.Y. 1974).

Furthermore, it is clear that a person may make an intelligent waiver of a constitutionally protected right. *See, e. g., Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In line with these decisions, this court has explicitly held that a defendant's right to be present at a pretrial suppression hearing may be waived or forfeited and, moreover, that a counsel's tactical decision that a defendant be absent from such a hearing is binding on the appellant. *Fludd v. United States*, D.C.App., 336 A.2d 539, 541 (1975); *Poteat v. United States*, D.C.App., 330 A.2d 229, 231–32 (1974). *See also United States v. Dalli*, 424 F.2d 45, 48 (2d Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970).

The procedures in a hearing on a motion to suppress identification testimony are designed to permit the trial court, outside the presence of the jury, to determine whether a pretrial identification by an eyewitness was violative of due process or right to counsel and, if such a violation is found, to decide whether an in-court identification would still be admissible because it has an independent source. *Clemons v. United States, supra* 133 U.S.App.D.C. at 34, 408 F.2d at 1237. Thus, at such a suppression hearing the trial court is making a conclusion of law that nothing which occurred prior to trial will taint an in-court identification. *In re W. K.*, D.C.App., 323 A.2d 442, 445 (1975). A defendant's presence therefore is not always essential in order to aid counsel in cross-examination of witnesses.

We note that the rules against trials in absentia were designed to protect the rights of the defendant, not the government. *United States v. Lockwood, supra* at 1115. Here, appellant believed that his presence would be more a detriment than a benefit. Because the Supreme Court has explicitly rejected the notion that a defendant must attend a proceeding "when presence would be useless, or the benefit but a shadow," *Snyder v. Massachusetts, supra*

---

**6.** Cases and Advisory Committee Notes interpreting the federal rule are equally applicable to the local rule. *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972).

291 U.S. at 106–07, 54 S.Ct. at 332, we hold that a defendant has a right to absent himself from a suppression hearing, where there is clearly on the record a voluntary and intelligent waiver of the right to be present.[7]

On the facts of the present case, however, even though the trial judge was incorrect in refusing to permit the defendant to absent himself from the proceedings, reversal is not in order. Such an error does not require reversal if the record affirmatively shows that the confrontation did not result in "any reasonable possibility of prejudice" to the defendant's substantial rights. *Walker v. United States*, 116 U.S.App.D.C. 221, 223, 322 F.2d 434, 436 (1963). *See Wade v. United States*, 142 U.S.App.D.C. 356, 360, 441 F.2d 1046, 1050 (1971); *United States v. Reynolds*, 489 F.2d 4, 8 (6th Cir. 1973), *cert. denied*, 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766 (1974); *Hayton v. Eagler*, 405 F.Supp. 1133, 1150 (E.D.Mich. 1975). Our review of the record here convinces us that appellant's presence at the pretrial suppression hearing had no tendency to influence the verdict against him. Complainant Lee had previously appeared and had spontaneously and positively identified each of the defendants. When complainant Walker took the stand at the suppression hearing, he explained that he had taken a good look at the faces of the men during the crime, and he described the heights of the men in relation to each other and the clothes each was wearing. When he pointed out the defendants, he spontaneously described appellant Hardy as "the one who had the gun. The one in the red plants, the beige jacket, and the white skull cap." He was similarly definite in his description of appellant Singletary as "the one who went through my pockets . . . the one wearing the dark clothes." Subsequently, before the jury, Mr. Walker again identified the men, as he had at the suppression hearing, according to the clothes they had worn and the role each had played during the robbery. He added no details which could be attributed to his opportunity to observe appellant during the hearing. At no time did he show any confusion between the two men, and he repeated that he had taken a good look at the men during the incident and had no doubt that these were the same men who had robbed him that night. Thus, although it was improper for the trial court to refuse the defendant's request that he be allowed to absent himself from the pretrial suppression hearing, it was not error to permit the subsequent in-court identification of the defendant since an independent source existed for the identification, and any suggestivity inherent in the defendant's attendance at the suppression hearing was not sufficient to vitiate this independent source. Because the defendant's presence at the suppression hearing during the testimony of the second complaining witness therefore did not result in any reasonable possibility of prejudice to him, his conviction should not be reversed on this ground.

7. The government argues that "the public's interest in insuring a defendant's presence at his trial proceedings in order to preserve the appearance of justice weighs heavily against any claimed 'right to be absent,'" *citing United States v. Curtis*, 173 U.S.App.D.C. 185, 186, 523 F.2d 1134, 1135 (1975). *Curtis* is, however, inapposite to the present case, for it dealt with the state's "independent interest in requiring a public *sentencing* in order to assure the appearance of justice and to provide a ceremonial ritual at which society pronounces its judgment." *Id.* (emphasis added, footnote omitted). Rule 43 specifically *requires* the presence of a felony defendant at sentencing, but a suppression hearing cannot be considered to be such a critical stage of the proceedings. *See United States v. Gradsky, supra.*

Similarly, the government's reliance on cases which mandate a defendant's presence at *trial,* e. g., *United States v. Moore*, 466 F.2d 547, 548 (3rd Cir. 1972), *cert. denied*, 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973), and *United States v. Fitzpatrick*, 437 F.2d 19, 27 (2d Cir. 1970), is unfounded. In those cases the defendants were attempting to prevent an *in-court* identification and thereby to thwart "the very purpose of the trial—the ascertainment of guilt *vel non.*" *United States v. Moore, supra.* This is very different from appellant's attempt here to prevent a complaining witness' in-court identification from sounding more credible than it should, solely because of the additional view of the defendant which had been available at the suppression hearing.

### III

Appellant Hardy's second contention is that the trial court committed prejudicial error in denying him his right to recross-examine Moses Walker as to issues which allegedly were explored for the first time during redirect examination. He argues that these new matters were crucial because each of them bore directly on the reliability and credibility of Walker's identification of appellant.

 It is not disputed that the opportunity to cross-examine a witness is a fundamental right, which is guaranteed to an accused in a criminal trial through the confrontation clause of the Sixth Amendment. *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Alford v. United States,* 282 U.S. 687, 691–92, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *Moss v. United States,* D.C.App., 368 A.2d 1131, 1134 (1977); *Lindsey v. United States,* 77 U.S.App.D.C. 1, 2, 133 F.2d 368, 369 (1942). Indeed, the necessity for full cross-examination is particularly acute in the context of a case such as this in which the purpose of the questioning is to demonstrate the lack of reliability or credibility of an identification witness. *United States v. Fitzpatrick,* 437 F.2d 19, 23 (2d Cir. 1970). *See Hampton v. United States,* D.C.App., 318 A.2d 598, 600–01 (1971). Nevertheless, once a party has had an opportunity substantially to exercise the right of cross-examination, the extent of further interrogation is within the sound discretion of the trial court, *Holmes v. United States,* D.C.App., 277 A.2d 93, 95 (1971), *citing Lindsey v. United States, supra,* and reversal by an appeals court is warranted only where an abuse of discretion leads to prejudice. *Best v. United States,* D.C.App., 328 A.2d 378, 381 (1974), *citing Howard v. United States,* 128 U.S.App.D.C. 336, 341, 389 F.2d 287, 292 (1967). *See Turner v. United States,* 441 F.2d 736, 739 (5th Cir. 1971).

 There is, moreover, generally no constitutional right to recross-examine a witness, since the scope of the redirect examination is limited to matters which were first raised on cross-examination, to which the opposing party is merely responding on redirect. *United States v. Morris,* 485 F.2d 1385, 1387 (5th Cir. 1973). Consequently, the extent of recross-examination is discretionary and may be strictly limited by the trial court. *United States v. Honneus,* 508 F.2d 566, 573 (1st Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Landers,* 484 F.2d 93, 95 (5th Cir.), *cert. denied,* 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974). In the rare case in which material new matters are brought out on redirect examination, however, the confrontation clause of the Sixth Amendment mandates that the opposing party must be given the right of recross-examination on the new issues—although the privilege of recross-examination as to matters *not* covered on redirect examination remains within the discretion of the trial court. *Hale v. United States,* 435 F.2d 737, 750 (5th Cir. 1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971), *citing United States v. Stoehr,* 196 F.2d 276, 280 (3rd Cir.), *cert. denied,* 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643 (1952).

Thus, the issue here becomes a factual one: were matters raised for the first time during the government's redirect examination of Mr. Walker? Although appellant challenges three areas of questioning, we conclude after a review of the record that no material new matters were introduced during redirect examination.

 The first allegedly new matter which was objected to by appellant relates to the length of time during which Walker was able to observe the man who robbed him. On redirect examination the following exchange occurred:

Q. How long would you say you looked at the face of the man who was outside the window with the gun?

A. Between eight and ten minutes, I guess.

Appellant argues that the exact time-frame of the incident was a crucial new matter, since particular figures had not been mentioned previously by Walker, and the specific length of time a witness has to observe

an assailant is of critical significance in the jury's assessment of the reliability of identification testimony. Cases cited by appellant [8] do not, however, establish the specific length of time which the witness had to view the criminal as a talisman; instead, they focus on several factors which may help the jury to evaluate a witness' opportunity to observe. The critical issue is not how long the eyewitness watched the criminal, but rather how well he was able to observe the other person, in the totality of the circumstances. *United States v. Wade, supra; Simmons v. United States, supra; Clemons v. United States, supra.*

■ In the context of this case, even though the precise length of the encounter had not previously been set out for the jury, this quantitative factor added virtually nothing to the record. Mr. Walker had already established in both direct and cross-examination that he had had a good opportunity to observe the men during the robbery. He had testified that during the event appellant Hardy had been standing only about three feet from him, in a well lit

area, and that he had been able to see the man's face. Further, Mr. Walker had continued to watch both robbers during the assault on Mr. Lee. From this description of the events it was clear that the encounter had lasted for a substantial period of time, and that Walker had taken more than a mere fleeting glimpse of his assailants. Moreover, Walker had told the jury that when he identified the men in the back seat of the police car at the scene of the incident, the man in dark clothes (appellant Singletary) had warned him that he had "better take good look at us," to which Walker responded "I taken a good look at you while you was robbing me, a very good look at you." Walker had also positively identified for the jury the gun and the clothing which appellants had been wearing, and he had stated that "[t]here is no doubt in my mind" that appellants were the men who had robbed him.[9] On this record, the precise duration of the incident was, at most, cumulative evidence. Because the testimony, therefore, was not a new matter, and furthermore was not prejudicial to the defense, it was within the trial court's dis-

---

8. Appellant directs the attention of the court to the following cases: *United States v. Wade, supra,* 388 U.S. at 241, 87 S.Ct. 81 (discussing an unquantified "prior opportunity to observe"); *Simmons v. United States, supra,* 390 U.S. at 385, 83 S.Ct. 967 (considering length of time of observation, lighting conditions, and the conduct of authorities during photographic identification procedures); *Neil v. Biggers,* 409 U.S. 188, 197, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (reiterating the *Simmons* holding and discussing *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 287 (1970), which ruled admissible testimony by a witness who "had a fleeting but 'real good look' at his assailant in the headlights of a passing car," *Neil v. Biggers, supra,* 409 U.S. at 197, 93 S.Ct. at 381; *Crawley v. United States,* D.C.App., 320 A.2d 309, 312, *reh. en banc denied,* 325 A.2d 608 (1974) (considering length of observation, lighting conditions, distance of robbers from the witness, and discrepancy between the original description by the eyewitness and the defendant's actual appearance); *Smith v. United States,* D.C.App., 315 A.2d 163, 167–68 (1974) (considering an "ample opportunity to observe" plus previous accurate pretrial identifications and trial judge's evaluation that the witness' testimony had "a ring of truth to it"); *Pender v. United States,* D.C.App., 310 A.2d 252, 254 (1973) (considering observation during two or three hours while crime was occurring);

*Clemons v. United States, supra,* 133 U.S.App. D.C. at 47, 408 F.2d at 1239 (considering the fact that several witnesses viewed appellant throughout a robbery); *U. S. v. Sanders,* 156 U.S.App.D.C. 210, 213 n.2, 479 F.2d 1193, 1196 n.2 (1973) (although footnote indicates that "[c]ounsel for the appellant justifiably questions the accuracy" of the witness' testimony concerning the length of time during which he observed the defendant, the case itself uses a "totality of the circumstances" standard, *see id.* at 1197–98); *United States v. Harris,* 154 U.S.App.D.C. 248, 249, 475 F.2d 359, 360 (1973) (in addition to the "extremely short period of observation"—which is not more specifically quantified—this case considers the inability of the victims to provide an accurate description and erroneous identifications at various pretrial confrontations).

9. Although an eyewitness' certainty as to his identification of a suspect is not, of course, a total assurance of the reliability of the identification, an assertion such as this is one factor to consider in determining the trustworthiness of the identification. *Crawley v. United States, supra, citing United States v. Johnson,* 147 U.S. App.D.C. 31, 37, 452 F.2d 1363, 1369 (1971); *Clemons v. United States, supra,* 133 U.S.App. D.C. at 39, 408 F.2d at 1242.

cretion to deny recross-examination on this issue.

Appellant Hardy argues that a second matter which was raised for the first time on the prosecutor's redirect-examination involved whether Walker had seen appellant before or at any time other than during the robbery and subsequent on-the-scene identification. His objection pertains to the following exchange.

Q. Have you ever seen [appellant] since [the night of the robbery]?

A. No.

Q. Not at all?

A. Not at all.

\* \* \* \* \* \*

Q. Had you ever seen either of these gentlemen before that day?

A. No.

Q. Had you ever seen either of the gentlemen that robbed you before that?

A. No, I don't think I had.

Q. Other than during the robbery, had you ever seen either of the gentlemen that the police brought back a few moments later?

A. A few minutes later?

Q. Yes, sir.

A. I'm not sure. Seems like I seen them at First and Q. I'm not for sure.

■ Appellant Hardy suggests that the somewhat ambiguous and possibly inconsistent nature of this testimony makes it an appropriate subject for recross-examination, since a witness' testimony concerning

his ability to recognize an assailant from observations either before or after the offense is a circumstance which could corroborate or negate the trustworthiness of the identification. Cases cited by appellant do not, however, establish the proposition that cross-examination is always required on the issue of whether a witness may have seen an assailant on a prior or subsequent occasion.[10] Moreover, in the total context of Walker's testimony, his uncertainty as to whether he had ever before seen the men whom the police brought back other than at the robbery would tend to undercut rather than to strengthen the trustworthiness of his identification. Accordingly, appellant's lack of opportunity for recross-examination on this testimony under the circumstances was not prejudicial and the trial court's ruling was not an abuse of discretion which would justify reversal.

■ The final allegedly new matter to which appellant Hardy objects relates to the fact that for the first time on redirect Mr. Walker stated that he was making his in-court identification by face.[11] In making his in-court identification on direct examination, Mr. Walker had described the defendants according to the roles they had played and the clothing they had been wearing at the time of the robbery. He had no trouble distinguishing between the two men, and he testified on both direct and cross-examination that he had taken a good look at the faces of both men during the incident. During cross-examination, in-

10. Appellant refers to *Moss v. United States, supra,* (does not go to the issue of a witness' ability to recognize a defendant outside the context of the offense); *Smith v. United States, supra* at 167 (no mention of cross-examination on the issue of other views of the assailant); *United States v. Sanders, supra,* 156 U.S.App. D.C. at 214, 479 F.2d at 1197; *United States v. Caldwell,* 151 U.S.App.D.C. 84, 87 n.3, 465 F.2d 669, 672 n.3 (1972) (no mention of cross-examination on the issue); *Gregory v. United States,* 133 U.S.App.D.C. 317, 324, 410 F.2d 1016, 1023, *cert. denied,* 396 U.S. 865 (1969); *Clemons v. United States, supra* 133 U.S.App.D.C. at 36, 38, 408 F.2d at 1239, 1241. As noted above, some of the cited cases make no reference to cross-examination on the issue of whether a witness may have seen a suspect on a prior or

subsequent occasion; those cases which do raise the subject simply comment, in a factual context, that a witness was cross-examined on the issue. Thus, the extent of cross-examination remains within the discretion of the trial court.

11. The exchange between the prosecutor and the witness was as follows:

Q. How can you identify him today? He's not wearing red pants and you haven't seen him since then.

A. Well, I identified him as to face.

Q. You are identifying him by his face?

A. Right.

Q. Are you sure of that?

A. Yes.

deed, he had gone further and testified that the man in dark clothing (appellant Single-tary) was missing two or three front teeth and that the man in red pants (appellant Hardy) did not have a beard at the time of the robbery. Against this background, Mr. Walker's testimony that he was now, in court, making his identification on the basis of the appellants' facial characteristics was not a "new matter," and it was within the discretion of the trial court to deny recross-examination on this issue.

*Affirmed.*