Darryl R. GREGG, Appellant,

v.

UNITED STATES, Appellee.

Leon Richardson, Appellant,

v.

United States, Appellee.

Nos. 96–CF–246, 97–CF–635, 98–CO–727.

District of Columbia Court of Appeals.

Submitted June 16, 1999.

Decided May 11, 2000.

Deborah A. Persico, Washington, DC, appointed by the court, was on the brief for appellant Gregg.

Bradford P. Johnson, Washington, DC, appointed by the court, was on the brief for appellant Richardson.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, Kevin E. Byrnes, and Asunción Cummings Hostin, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellants Gregg and Richardson were convicted of second-degree burglary while armed,[1] armed robbery,[2] and possession of a firearm during a crime of violence.[3] On appeal, they both challenge the trial court's denial of their motions to suppress their showup identifications; they also contend that the evidence was insufficient to support their convictions. We find no merit in these arguments. Gregg also maintains that the court erred in denying his motion to vacate sentence under D.C.Code § 23–110 (1996), based on a claim of ineffective assistance of counsel. He maintains that his attorney's absence from the courtroom during portions of the *voir dire* of the jury constituted ineffective assistance *per se*. Although the question is a close one, we conclude that Gregg was not denied his Sixth Amendment right to counsel. Accordingly, although counsel's departure from the courtroom was ill-advised, and although the trial judge should not have acquiesced in it, we affirm the convictions of both appellants and the denial of Gregg's § 23–110 motion.

I

Shortly before 6:00 p.m. on July 24, 1995, a dark-skinned man wearing dark clothes and a black hat (later identified as appellant Gregg) entered a Murry's Steaks carry-out on Benning Road, N.E., and purchased some styrofoam cups. When Jimmy Bennett, the cashier, opened the cash register to complete the sale, another man (later identified as appellant Richardson) entered the store, wearing a shiny black shirt, black pants, sunglasses, and a bandanna over the lower part of his face. He pointed a gun at Mr. Bennett and ordered him to leave the cash register drawer open. A customer attempted to leave the store, but Richardson grabbed her and pulled her back inside. While Richardson's attention was momentarily diverted, Bennett tapped on the front window of the store to get the attention of Vaughn Galery and Crystal Skinner, who were standing outside on the sidewalk, engaged in conversation.[4] Galery turned and saw Richardson pointing a pistol at Mr. Bennett, whereupon Galery and Skinner im-

---

1. D.C.Code §§ 22–1801(b) and 22–3202 (1996).

2. D.C.Code §§ 22–2901 and 22–3202 (1996).

3. D.C.Code § 22–3204(b) (1996).

4. Skinner was an employee of Murry's Steaks, and Galery was a former employee. Galery had a new puppy which he had brought to show to his friends at the store.

mediately ran to a fast-food restaurant across the street.

Richardson noticed Bennett tapping on the window and instructed him to "hurry up." Bennett handed Richardson the cash register drawer, but Richardson, apparently nervous, dropped it on the counter. He quickly picked up the drawer and placed it in the plastic bag with the styrofoam cups, which Gregg was holding. Gregg then helped Richardson collect the coins that had fallen out of the drawer and put them also in the bag. After the two left the store, Bennett called 911 and gave a description of the robbers. He described the first one (Gregg) as tall, heavy-set, and brown-skinned. The second one (Richardson) he described as heavy-set and dark-skinned, about 5'7" tall, and wearing all black clothing.

Galery watched from across the street as the two robbers came out of the store and drove away in a black Cadillac with chrome wire wheels. He then called the police and gave them a description of the car and the robbers' clothing. The police dispatcher broadcast a lookout for the two robbers, based on descriptions provided by Bennett and Galery.[5]

Approximately half an hour later, Metropolitan Police Officer Kurt Delpo spotted a black Cadillac about two miles from the scene of the robbery. Gregg was driving, and Richardson was riding in the front passenger seat. When Officer Delpo pulled his unmarked police car up beside the Cadillac, Richardson jumped out and ran. Officer Delpo gave chase, but eventually lost him. Gregg, however, was detained by another officer.

Shortly thereafter, Officer Adrian Treadwell spotted Richardson crouching behind a bush in the 100 block of 47th Street, N.E. Richardson ran when he saw Officer Treadwell, but the officer pursued and caught him. Upon learning where Richardson had been found, Officer Delpo retraced the route he believed Richardson had taken and found a black cap in an alley. The police also recovered a pair of black sweat pants, a red cap, a bandanna, and a pair of sunglasses from the Cadillac. However, they did not find a gun, the cash drawer, any coins, or a Murry's Steaks plastic bag inside the car.

The police took Gregg and Richardson back to Benning Road for identification by Galery and Bennett. By then approximately sixty-five minutes had passed since the robbery. Before the identifications, police told the witnesses that the persons they were going to view "matched the descriptions" they had given of the two robbers. Galery and Bennett individually viewed each appellant separately from inside Murry's Steaks, looking out through the front window. Appellants were on the other side of Benning Road, approximately twenty-five yards away. Their hands were cuffed behind their backs, and they were surrounded by several officers and three police cars. Detective William White, who stood next to Galery and Bennett while they made the identifications, testified that there were "no obstructions" between the witnesses and the two suspects and that the witnesses could see Richardson and Gregg well enough to distinguish their clothing and facial features. Without hesitation, both Galery and Bennett positively identified appellants as the two men who had robbed the store.

## II

Appellants' challenges to the showup identifications as unduly suggestive and unreliable are meritless. Neither the custodial appearance nor the officers' statement that the appellants "matched the descriptions" given by the witnesses rendered the identifications unduly sug-

---

5. Galery testified that about five minutes before the robbery, the man he later identified as one of the robbers (Gregg) had approached him on the sidewalk in front of Murry's Steaks and asked if he wanted to buy a watch. When Galery declined the offer, Gregg walked away.

gestive. *Singletary v. United States,* 383 A.2d 1064, 1069 (D.C.1978) (with suspects seated in police car, witnesses were told, "We got two guys in the car similar to the ones you told us about"); *see Turner v. United States,* 622 A.2d 667, 672 (D.C. 1993) (suspect was standing next to police car and police officers and was obviously in custody, but not in handcuffs); *Garris v. United States,* 559 A.2d 323, 327 (D.C. 1989); *Fields v. United States,* 484 A.2d 570, 574 (D.C.1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2144, 85 L.Ed.2d 501 (1985); *Washington v. United States,* 334 A.2d 185, 186 (D.C.1975) (detective told victim, "We got your man, we think"); *Jones v. United States,* 277 A.2d 95, 98 (D.C.1971) (suspect was seated in the back of a police car in handcuffs when witness identified him).

To the extent that they may have been suggestive, the identifications were nonetheless reliable. *See Stewart v. United States,* 490 A.2d 619, 623 (D.C.1985) (listing factors which courts consider when assessing reliability of an identification); *accord, e.g., In re B.E.W.,* 537 A.2d 206, 208 (D.C.1988); *Taylor v. United States,* 451 A.2d 859, 863 (D.C.1982), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2105, 77 L.Ed.2d 311 (1983). Both witnesses had an opportunity to view the robbers for several minutes and provided accurate descriptions of the robbers, including their height, weight, skin color, and clothing, and a description of the car in which they fled. Both positively identified appellants without hesitation a little over an hour after the robbery. *See Washington,* 334 A.2d at 187 (identification made more than an hour after crime); *Jones,* 277 A.2d at 98 (identification made one hour after crime). Finally, viewing the evidence in the light most favorable to the government, as we must, *White v. United States,* 714 A.2d 115, 118 (D.C.1998), we hold that the evidence was sufficient. Not only were the identifications reliable, but other evidence, including the kind of clothing worn by appellants and the car they were driving when they were apprehended, supported the verdict.

### III

Following the initial questioning of the jury panel by the court, Gregg's counsel requested permission to be absent during a portion of the individual *voir dire* of the potential jurors:

THE COURT: Mr. Finnerin [courtroom clerk], I'll ask you to set up in the jury room. And when we come back, counsel, do your clients wish to be in [the] jury room also?

[COUNSEL FOR GREGG]:[6] No.

[COUNSEL FOR RICHARDSON]: No, Your Honor.

THE COURT: That's fine.

[COUNSEL FOR GREGG]: I appreciate it. Your Honor, may I be able to defer to co-counsel? I'm needed in several places, and certainly experienced counsel can do a jury [*sic*] better than I can.

THE COURT: Well, waive your appearance for a portion of the *voir dire?*

[COUNSEL FOR GREGG]: Yes, Your Honor.

THE COURT: I have no objection. Anybody have an objection?

MR. BYRNES [the prosecutor]: I see no problem with that, as long as the waiver is agreed to by the client.

[COUNSEL FOR GREGG]: Yes, the client agrees. That's why I did it in open court.

MR. BYRNES: Oh, okay. Could we just simply ask the defendant, Your Honor, whether he agrees with that decision?

THE COURT: All right. Out of an abundance of caution, Mr. Gregg, is that all right with you?

DEFENDANT GREGG: Yes.

---

**6.** Gregg is represented by new counsel on appeal. The name of his trial counsel does not appear in this opinion.

By the time Gregg's counsel returned to court, two members of the venire had been struck for cause, and another had been questioned. Thereafter the court questioned seventeen additional prospective jurors. Counsel for Gregg then asked permission to be absent again:

[COUNSEL FOR GREGG]: Your Honor, may I be excused at ten minutes of 1:00? I have a hearing.

THE COURT: Under the same guidelines we discussed?

[COUNSEL FOR GREGG]: Yes.

The remaining eighteen venire members were questioned during counsel's second absence, but counsel returned before the jury was finally selected and sworn.

After noting an appeal from his conviction, Gregg filed a motion for relief under D.C.Code § 23–110, arguing that his counsel's absence during a significant portion of the voir dire constituted ineffective assistance. The court denied the motion in a two-page order, saying:

> Defendant's argument is disingenuous, given the fact that defendant in open court explicitly waived his right to voir dire jurors in the jury room for a brief period of time in favor of co-counsel's voir dire. Indeed, the trial court inquired of defendant directly to make certain that he wished to waive his rights. Even if there had not been a waiver, defendant fails to demonstrate how this alleged deficiency of performance amounts to prejudice.

On appeal Gregg renews his contention that his Sixth Amendment right to counsel was violated by his counsel's absence during part of the voir dire.

■ Ordinarily, we review claims of ineffective assistance of counsel under the familiar two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* to succeed on a claim of ineffective assistance, a defendant bears the burden of proving (1) that his trial counsel's performance was deficient, and (2) a

reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id.* at 688, 104 S.Ct. 2052; *accord, e.g., Stratmon v. United States,* 631 A.2d 1177, 1182 (D.C.1993). However, acting on the "presumption that counsel's assistance is essential" to a fair trial, the Supreme Court has "conclude[d] that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Thus "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n. 25, 104 S.Ct. 2039 (citing cases). The Court has specifically held the *voir dire* of the jury to be such a "critical stage." *Gomez v. United States,* 490 U.S. 858, 873, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989).

■ The government does not dispute that Gregg had a Sixth Amendment right to counsel during *voir dire;* it claims, rather, that he waived that right. We have specifically "recognized that the right to counsel may be waived." *United States v. Rorie,* 518 A.2d 409, 413 (D.C.1986); *see also Singletary,* 383 A.2d at 1071 ("a person may make an intelligent waiver of a constitutionally protected right"). However, for such a waiver to be valid, the defendant must intentionally relinquish or abandon a known right or privilege, *i.e.,* the waiver must be knowing, voluntary, and intelligent. *Rorie,* 518 A.2d at 413 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). To establish that a defendant has effected a valid Sixth Amendment waiver, "the government bears a heavy burden to show that an accused understands that in fact he had a right to counsel and that he intentionally relinquished or abandoned his right." *Id.* (citing *Shreeves v. United States,* 395 A.2d 774, 781 (D.C.1978), *cert. denied,* 441 U.S. 943, 99 S.Ct. 2161, 60 L.Ed.2d 1045 (1979)); *see also Brewer v.*

*Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). "[T]he particular facts surrounding the case, including the experience, background, and conduct of the defendant," are relevant to any assessment of whether the waiver was valid. *Shreeves,* 395 A.2d at 781.

In this case, the colloquy between the court and Gregg's counsel concerning his absence during part of the *voir dire* was far too brief and fails to establish that Gregg made a knowing and intelligent waiver of his right to counsel. Gregg did agree in open court to his attorney's absence, but he was never advised by anyone—at least, not on the record—of the potential consequences of that decision. Thus, had Gregg been the sole defendant at trial and had his co-defendant's counsel not been available to assist him, the waiver would likely be insufficient, and counsel's absence would constitute ineffective assistance under *Cronic.*

What saves this case from reversal is the presence of Richardson's counsel, to whom Gregg's counsel specifically deferred to conduct the individual *voir dire* of the potential jurors. Gregg then expressly agreed to have Richardson's attorney serve as substitute counsel. Thus, unlike the typical Sixth Amendment case, Richardson's counsel was present to explain Gregg's rights and assist in his defense. *See Cronic,* 466 U.S. at 654, 104 S.Ct. 2039 ("Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have"). Although the duration of his attorney's absence is not disclosed by the record, Gregg was never completely without legal assistance.

A similar situation arose in *United States v. Turner,* 975 F.2d 490 (8th Cir. 1992), *cert. denied,* 506 U.S. 1082, 113 S.Ct. 1053, 122 L.Ed.2d 360 (1993). In that case, defense counsel, with the court's permission, was absent from significant portions of the trial. While he was absent, the defendant "had substitute counsel, usually one of his co-defendants' lawyers." *Id.* at 496. In addition, the court had questioned the defendant before trial about his waiver of counsel's presence:

> THE COURT: ... Mr. Turner, you understand according to the waiver that things might happen that would be detrimental to you at a time when [your attorney] wasn't here. And although I certainly have an obligation to protect everybody to a certain extent, I cannot guarantee you I will be in a position to point those things out if [your attorney] isn't here.
>
> MR. TURNER: Yes, that's all right.
>
> THE COURT: You are agreeable to his not being here?
>
> MR. TURNER: I agree to that, but you say I have to be here?
>
> THE COURT: Yes.
>
> MR. TURNER: That's no problem.

*Id.* at 495. The court informed the defendant that his counsel's absence might "disadvantage" his defense, but it did not otherwise "examine Turner on the possible consequences of his decision....." *Id.* at 496. The defendant had, however, signed a written waiver before trial which stated that he had been "fully advised of his rights to the effective representation of counsel." The waiver also said:

> 4. That the Defendant is aware that he has the right to have his counsel present during the presentation of all of the testimony of this cause, but is aware that ... much of the testimony consist[s] of matters upon which his counsel would have no cross-examination.
>
> 5. That the Defendant, Robert Turner, is aware that if his counsel is not present in the courtroom [and] that if any testimony that is prejudicial to him is introduced that no objection could be made thereto, no cross-examination made thereof and so there would be no one in the courtroom protecting his interests.
>
> 6. That Robert Turner has no objection to his counsel being absent during

those portions of the proceeding, including the presentation of evidence, to which his counsel determine[s] that his presence is not essential in the protection of the rights of the defendant, Robert Turner, and that Robert Turner does hereby specifically and particularly waive the assistance of counsel, and his own presence if approved by the Court, during such periods.

*Id.* at 495–496. On appeal, the court "consider[ed] it extraordinary for a lawyer, with or without the consent of his client, to absent himself from a trial." *Id.* at 496. Nevertheless, the court concluded that the trial court had "satisfied itself that Turner's lawyer had properly advised him" and held that his waiver was "constitutionally sufficient." *Id.*

Unlike the defendant in *Turner,* Gregg did not sign a written waiver of his attorney's presence. Nor did the court conduct any inquiry into Gregg's decision to waive his attorney's presence during *voir dire,* other than to ask him a single question "out of an abundance of caution." However, the record does reveal that counsel had discussed his proposed absence with Gregg before the issue was raised in court, and that Gregg had earlier agreed to the absence. In addition, Gregg's counsel was absent only during portions of the *voir dire* of the potential jurors, not during the presentation of evidence. Though both are "critical stages" for purposes of *Cronic,* the distinction is pertinent to determining whether a waiver of counsel's presence during part of a trial is constitutionally valid. During the absences of Gregg's counsel, Richardson's counsel conducted an effective inquiry into the potential jurors' possible biases and struck two of them for cause. Upon his return, Gregg's attorney participated in the selection of the jury along with Richardson's attorney. Gregg does not contend that the performance of Richardson's counsel was deficient during *voir dire,* nor does our review of the record reveal any deficiency. Finally, we note that even when Gregg's counsel was

present, he deferred to Richardson's counsel to conduct the general *voir dire,* as well as a substantial part of the individual questioning of the prospective jurors.

 Like the court in *Turner,* "we consider it extraordinary for a lawyer, with or without the consent of his client, to absent himself from a trial." 975 F.2d at 496. At least when no substitute counsel is present, such an absence would almost certainly require automatic reversal under *Cronic,* regardless of whether a specific showing of prejudice could be made. What happened here was unfortunate and should not be repeated. Nevertheless, in the specific circumstances of this case, we hold that Gregg was not deprived of his Sixth Amendment right to the effective assistance of counsel. *See Kinard v. United States,* 635 A.2d 1297, 1307–1308 (D.C. 1993).

## IV

We stress that the circumstances of this case are unusual and that ordinarily an attorney's absence during a critical stage of the trial would in all likelihood constitute a Sixth Amendment violation. Here, however, Gregg had the benefit of his co-defendant's counsel during his own attorney's absence and expressly waived his attorney's presence at *voir dire.* Since we conclude that in these circumstances Gregg was not prejudiced by his counsel's absence, his conviction, Richardson's conviction, and the denial of Gregg's § 23–110 motion are all

*Affirmed.*