*1229 WILSON, Circuit Judge,
dissenting:
The Constitution guarantees criminal defendants a fair trial. That guarantee does not require a perfect trial — it simply demands a trial that affords defendants a few basic protections. The most critical of those protections is the right to counsel. See United States v. Cronic, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984) (“Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.” (internal quotation marks omitted)). “‘The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.’ ” Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975).
Absent defense counsel, the trial-process transforms from an adversarial search for truth to a one-sided prosecutorial campaign. Such a proceeding is incompatible with the Constitution’s commitment to due process. “While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.” Cronic, 466 U.S. at 657, 104 S.Ct. at 2046 (internal quotation marks omitted).
In stark contrast to the adversarial process and attendant protections demanded by the Constitution, the trial here proceeded while the defendant’s sole counsel was absent. The defendant sat alone at counsel’s table in the presence of the jury; defense counsel was nowhere to be seen. There were no other defendants or defense counsel present. Nonetheless, the trial judge reconvened the proceedings earlier than scheduled, and the skilled prosecutor introduced the testimony of the government’s key witness — a law enforcement computer forensics expert — with the defendant still alone at counsel’s table. The testimony was directly inculpatory, used to convict the defendant of federal felony charges and to sentence him to life in prison.
This type of one-sided proceeding is an affront to the integrity of our system and a violation of the defendant’s rights to a fair trial and to counsel. Correlatively, such a serious constitutional error is unique in that it alters the structure of the trial itself, resulting in consequences that are both immeasurable and likely extremely prejudicial. For that reason, I believe the error amounts to structural error, requiring automatic reversal and new, constitutionally-compliant proceedings. The Constitution does not demand that the defendant go free — rather, it demands that, prior to being deprived of his liberty, the defendant receive a trial with the basic protections to which he is entitled.
The Majority, however, does not view the circumstances here as so serious a constitutional violation and so damaging a blow to the integrity of the trial process as I do. The disagreement between the Majority and myself centers on the scope of structural error and what constitutes Cronic error. A constitutional violation is a structural error if the violation undermines the basic guarantee of fairness, resulting in a strong potential for prejudice and immeasurable effects. Cronic error is a specific type of structural error — it arises when a defendant is denied counsel at a “critical stage” of the proceedings.
I believe that the denial of counsel during the introduction of inculpatory evidence by a key prosecution witness constitutes structural error. The guiding structural-error criteria, as well as Cronic, lead me to this conclusion. By calling such an error harmless trial error, the Majority affirmatively holds that the in *1230 troduction of inculpatory evidence in counsel’s absence is an “unimportant and insignificant” constitutional error. See Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The Majority reaches this conclusion by improperly performing the structural-error analysis required under Supreme Court precedents. Because the Majority’s analysis departs from those precedents and reaches a result at odds with the basic premises of the Constitution, I respectfully dissent.
I.
The combined force of the Fifth and Sixth Amendments of the United States Constitution guarantees all federal criminal defendants the right to a fair trial. Under the Fifth Amendment, a fair process is required before a defendant’s liberty can be taken away. When a trial court impedes a defendant’s ability to obtain the “guiding hand of counsel at every step in the proceedings against him,” it violates the due process guarantee of the Fifth Amendment. See Brooks v. Tennessee, 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972) (quoting Powell v. Alabama, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). Furthermore, the Supreme Court has repeatedly emphasized the fundamental nature of the Sixth Amendment right to counsel — it is this right that preserves the defendant’s other rights and the integrity of the judicial system itself. See, e.g., Cronic, 466 U.S. at 656, 104 S.Ct. at 2045; Kaley v. United States, 571 U.S. -, -, 134 S.Ct. 1090, 1107, 188 L.Ed.2d 46 (2014) (Roberts, C.J., dissenting) (“In many ways, [the Sixth Amendment right to counsel] is the most precious right a defendant has, because it is his attorney who will fight for the other rights the defendant enjoys.”); see also Stano v. Dugger, 921 F.2d 1125, 1170-71 (11th Cir. 1991) (en banc) (Tjoflat, J., dissenting) (“[T]he right to counsel is a fundamental component of the criminal justice system” because counseled representation protects “the very integrity of our system — its fairness, its accuracy as a truth-seeking process, and thus its ability to accord justice.”).
A criminal defendant who has been denied counsel cannot — by that very measure — have received a fair trial because “lawyers in criminal courts are necessities, not luxuries.” Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). The Constitution calls on the courts to vigilantly ensure that this right is upheld, and we, as judges, must “indulge every reasonable presumption against waiver” of the right. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Indeed, “the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary fact-finding process that has been constitution-alized.” Herring, 422 U.S. at 857, 95 S.Ct. at 2553.
The admission of inculpatory evidence against a defendant while his counsel is absent violates these fundamental rights. The core issue presented herd is whether that constitutional violation is structural or trial error. The Supreme Court has held that all criminal defendants are entitled to a trial free from error that calls into question the fairness of the proceeding because such an error strikes a blow to the framework — the structure — of the proceeding itself. See Cronic, 466 U.S. at 657-58, 104 S.Ct. at 2046. This type of constitutional error, known as “structural error,” occurs when there are “circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified,” id. at 658, 104 S.Ct. at 2046, or when the effects of the error defy assessment absent impermissible specula *1231 tion, see United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S.Ct. 2557, 2564, 165 L.Ed.2d 409 (2006); Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993) (noting that structural errors are “necessarily unquantifiable and indeterminate”).
When structural error occurs, the courts must presume prejudice and reverse for a new trial. See Cronic, 466 U.S. at 659 & n.25, 104 S.Ct. at 2047 & n.25 (“[Structural error is] constitutional error of the first magnitude and no amount of showing of want of prejudice w[ill] cure it.” (internal quotation marks omitted)). Automatic reversal is required because “there are some constitutional rights so basic to a fair trial that their infraction” infects the entire trial process and “can never be treated as harmless error.” Chapman, 386 U.S. at 23, 87 S.Ct. at 827-28; accord Brecht v. Abrahamson, 507 U.S. 619, 629-30, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993). This does not mean a trial on the whole must be unfair for an error to be structural; rather, structural error exists when the defendant has been denied “a particular guarantee of fairness.” See Gonzalez-Lopez, 548 U.S. at 146, 126 S.Ct. at 2562.[1]
The Supreme Court has identified several sets of circumstances that constitute structural error, including the provision of an erroneous reasonable-doubt instruction, the denial of the right of self-representation, and the denial of the right to a public trial. See, e.g., Sullivan, 508 U.S. at 280-81, 113 S.Ct. at 2082; McKaskle v. Wiggins, 465 U.S. 168, 177-78 & n.8, 104 S.Ct. 944, 950-51 & n.8, 79 L.Ed.2d 122 (1984); Waller v. Georgia, 467 U.S. 39, 49 & n.9, 104 S.Ct. 2210, 2217 & n.9, 81 L.Ed.2d 31 (1984). In addition, in Cronic, the Court held that the denial of counsel at a “critical stage” of trial amounts to structural error. See 466 U.S. at 659, 104 S.Ct. at 2047. The potential for prejudice when counsel is denied during a critical stage is so great that fairness demands automatic reversal.
This case involves an important type of structural error — the denial of counsel.[2]
*1232 See Gonzalez-Lopez, 548 U.S. at 149, 126 S.Ct. at 2564. As noted above, structural-error analysis turns on the potential for prejudice and whether the effect of an error is readily assessable. Considering these factors, the absence of the defendant’s sole counsel during the introduction of inculpatory evidence undoubtedly constitutes structural error. But, perhaps even more telling, Cronic also specifically requires a finding that the denial of counsel in these circumstances amounts to structural error.
A.
The defendant in this case was denied his right to counsel while the jury heard directly inculpatory evidence, depriving him of a core constitutional guarantee. As the jury watched, the court departed from the traditional trial framework of a defendant having counsel by his side while the prosecution offers evidence against him. Under these circumstances, the denial of counsel yields strong potential prejudice and the effects of the error are “necessarily unquantifiable and indeterminate”' — • gauging the effect requires speculation. Thus, the circumstances in this case “unquestionably qualif[y] as structural error.” Cf. Gonzalez-Lopez, 548 U.S. at 149, 126 S.Ct. at 2564 (internal quotation marks omitted). I broadly address the potential for prejudice and speculative nature of the effects of this error before turning to the facts of the proceedings below.
A number of Supreme Court cases addressing structural error caused by the absence of counsel demonstrate that the potential for or likelihood of prejudice is key to determining which errors are structural. For example, in Hamilton v. Alabama, the Court held that counsel’s absence during the defendant’s arraignment was structural error. 368 U.S. 52, 54-55, 82 S.Ct. 157, 158-59, 7 L.Ed.2d 114 (1961). In reaching this determination, the Court did not require that the defendant provide any evidence that his plea would have been different had counsel been present; that is, the Court did not consider whether the defendant was actually prejudiced by counsel’s absence. Reversal was automatic. Id. at 55, 82 S.Ct. at 159. Likewise, in White v. Maryland, the Supreme Court automatically reversed the lower court because the prosecution introduced evidence at trial of a guilty plea that the defendant entered before he was appointed counsel. 373 U.S. 59, 59-60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (per curiam).
These cases make clear that the potential for prejudice is what results in structural error.[3] Actual prejudice is not required. In Hamilton, the defendant never indicated that the presence of counsel at the arraignment actually would have changed the outcome, and the Court did not analyze this possibility. In White, the potential for prejudice was sufficient to vacate the conviction, even though the potential prejudice — admission into evidence of the guilty plea — could have been miti *1233 gated by counsel’s presence and the opportunity to cross-examine. White is especially informative for what it ultimately found violative of the right to counsel. There, the potential prejudice arose from the creation of inculpatory evidence in counsel’s absence.
If the absence of counsel during the creation of inculpatory evidence was considered structural error in White, it is also structural error for a court to allow the admission of inculpatory evidence in counsel’s absence. In both circumstances, the potential for prejudice arises from the potential for the jury to hear inculpatory evidence in violation of the defendant’s right to counsel. There is extreme potential for prejudice against a defendant who is left without counsel as the prosecution presents the jury with incriminating evidence for its consideration. If allowing a criminal defendant to “stand alone” — in this defendant’s case, truly, entirely alone — against the government while the prosecution elicits incriminating testimony does not constitute a structural defect in the proceedings, it is difficult to envision what would. See United States v. Wade, 388 U.S. 218, 226-27, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967) (“[I]n addition to counsel’s presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel’s absence might derogate from the accused’s right to a fair trial.” (footnote omitted)). These “circumstances ... are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.” See Cronic, 466 U.S. at 658, 104 S.Ct. at 2046.
The Supreme Court has also indicated that where the impact of a serious constitutional defect is subject to pure speculation, the defect constitutes structural error. See Gonzalez-Lopez, 548 U.S. at 149 n.4, 126 S.Ct. at 2564 n.4 (rejecting the use of a “single, inflexible criterion” for determining structural error and instead finding that structural error occurred in light of the pure speculation involved in determining what would have happened but for the error); see also Satterwhite, 486 U.S. at 256, 108 S.Ct. at 1797 (stating that when “the scope of a violation ... cannot be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative”); Holloway v. Arkansas, 435 U.S. 475, 490-91, 98 S.Ct. 1173, 1181-82, 55 L.Ed.2d 426 (1978).
Thus, a key distinction between trial error and structural error is that the latter occurs where the effect of the error is “necessarily unquantifiable and indeterminate.” See Sullivan, 508 U.S. at 281-82, 113 S.Ct. at 2083. This is why structural errors are markedly different from trial errors, which can be “quantitatively assessed.” Id.; see also Arizona v. Fulminante, 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Given the “myriad aspects of representation,” there are numerous unknowable possibilities that may have been permitted or prevented by the participation of an attorney during the prosecution’s introduction of inculpatory evidence. Cf. Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. at 2564.
The admission of inculpatory evidence against the defendant in a criminal trial while counsel is absent from the courtroom is not a trivial error; we cannot simply review the remainder of the evidence against the defendant to determine whether the outcome of the trial would have been different. The absence of counsel under such circumstances has unquantifiable effects on the jury’s perceptions of the defendant and counsel’s ability to marshal an adequate defense. “Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.” See id., 126 S.Ct. at 2565. We cannot know what *1234 defense counsel would have said or done had he been present the first time around; nor can we ascertain with any degree of certainty how the prosecution’s approach or the witness’s answers might have changed if defense counsel had been present and able to participate in the process. We are therefore not able to accurately assess the impact counsel’s absence had on the proceedings. As the Majority points out, maybe it had no impact; but it is just as likely that it had a significant negative impact. Either way, we are forced to speculate. This problem is sufficient on its own to find structural error. See id. at 149 n.4, 126 S.Ct. at 2564 n.4 (“[H]ere, as we have done in the past, we rest our conclusion of structural error upon the difficulty of assessing the effect of the error.”).
Turning to the facts of this case, there is no question that defense counsel’s absence during the introduction of directly inculpa-tory evidence raised substantial potential for prejudice, the full extent of which is immeasurable. A law enforcement expert testified for the prosecution during defense counsel’s absence, answering inculpatory questions about where the photographs of the underage victim were found and providing graphic descriptions of the images. Specifically, the expert testified that the photos of the minor were taken on “March the 10th, 2005, at 6:49 p.m.” He repeated that assertion again during counsel’s absence, reiterating that the photos were “created initially by the camera” on “March the 10th of 2005 at 6:49 p.m.” The expert also detailed the location of the files on the defendant’s computer, including descriptions of directories, subdirectories, and sub-subdirectories, as well as the categorization of those files. In asking the expert about ■ the files, the prosecutor called them “notable images,” and the expert substantiated that characterization by mirroring the characterization in his answer and providing a detailed description of the content of the photos. Finally, the expert opined on the date of the images’ creation and the date they were uploaded to the computer.
This testimony went straight to the heart of one crime for which the defendant was tried (possession of child pornography) and supported an inference that the defendant would have been predisposed to commit the other crime (enticement of a minor). Critically, after defense counsel returned, the expert testified that the photos had been created on “March 11, 2006,” contrary to the testimony he gave while counsel was absent. These circumstances are instructive as to both the potential for prejudice at an “inculpatory evidence” stage and the speculation required to assess the effect of this error.
The fact that the trial proceeded without the defendant’s sole counsel present raises a slew of highly prejudicial circumstances. Most immediately, and as a practical matter, defense counsel lost the opportunity to observe the witness’s testimony firsthand, which limited his ability to assess (1) the witness’s demeanor when giving the testimony, (2) the jurors’ demeanors when hearing the witness’s testimony, and (3) the jurors’ reactions to the evidence admitted. Cf. Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (noting that only those who have the opportunity to observe witness testimony firsthand “can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding of and belief in what is said”). The jurors’ reaction to testimony is incredibly important to inform defense counsel’s strategy decisions moving forward. Here, defense counsel missed the jurors’ initial reactions to the introduction of inculpatory evidence and thus lost a key opportunity to assess his client’s case in response. That the evidence was resubmitted to the jury immediately after defense counsel arrived does not assuage the error; *1235 the element of surprise was gone and any initial reactions to the evidence went with it. Moreover, this lost opportunity impacted not only the immediate steps counsel took following the reintroduction of this evidence in his presence but also the approach he took thereafter. See Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. at 2564 (describing the “myriad aspects of representation” the participation of an attorney entails). And the re-introduction of the same evidence gave the prosecution the advantage of repetition, thereby emphasizing that inculpatory evidence.
Furthermore, witness demeanor may be dispositive for a jury. In the words of Judge Learned Hand, “[t]he carriage, behavior, bearing, manner, and appearance of a witness — in short, his ‘demeanor’ — is a part of the evidence. The words used are by no means all that we rely on in making up our minds about the truth of a question....” Dyer v. MacDougall, 201 F.2d 265, 268-69 (2d Cir. 1952). Indeed, we regularly recognize and defer to “the whole nexus of sense impressions which [the jury] get[s] from a witness,” and thus generally affirm findings of fact by a jury “on the hypothesis that this part of the evidence may have turned the scale.” Id. at 269. These are “matters that cannot be gleaned from a written transcript.” See United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995) (noting that some of the benefits of live testimony include the ability “to see the witness’s physical reactions to questions, to assess the witness’s demeanor, and to hear the tone of the witness’s voice”).
Even more troubling, in this particular case, the introduction of testimony in counsel’s absence prevented defense counsel from impeaching a key government witness’s credibility. During defense counsel’s absence, the law enforcement expert stated that the date on the camera was 2005. Later, he said it was 2006. Regardless of whether the expert misrepresented or misspoke, if counsel had been there in the first instance, he could have attacked the witness’s credibility on cross-examination. However, during cross-examination, defense counsel did not mention the discrepancy between the expert’s first statement and his second. It is, at the very least, reasonable to conclude that counsel’s failure to cross-examine the expert about this mistake occurred because counsel was unaware of the discrepancy. Counsel was not present when the expert first said 2005 and the expert never repeated that inconsistent statement.[4]
Contrary to the Majority’s view, the effects of a lost opportunity to impeach are not perfectly quantifiable. Lost opportunities matter.[5] See Geders v. United States, *1236 425 U.S. 80, 91, 96 S.Ct. 1380, 1336-37, 47 L.Ed.2d 592 -(1976) (reversing without inquiry into prejudice because counsel was denied the opportunity to confer with his client during a recess); Herring, 422 U.S. at 865, 95 S.Ct. at 2556-57 (reversing without inquiry into prejudice because trial judge’s order denying counsel the opportunity to make a summation at close of bench trial denied defendant assistance of counsel). We are left to wonder whether the credibility of the witness may have been impeached with regard to the photo dates, and what would have happened had the jury had the benefit of this impeachment.
The significance of such an error is particularly obvious in this case: the defendant did not have contact with the victim until at least August of 2005, months after the date the expert initially claimed the photo was taken. Attacking credibility is one of the best tactics a defense attorney may have to undermine a witness’s testimony. When an attorney demonstrates that a witness has made an inconsistent statement, it allows the attorney to argue to the jury that other things the witness said might not have been trustworthy or reliable either. Accordingly, the admission of inculpatory evidence in the absence of defense counsel in this case critically impaired the defendant’s right to present a defense, particularly the right to challenge the credibility of an important government witness. See Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967).
Moreover, defense counsel’s absence during the introduction of inculpatory evidence not only affected counsel’s ability to advocate for his client but also potentially prejudiced the defendant’s case by the appearance that the absence presented to the jury. I question what the jurors must have thought when they saw the district court commence proceedings without defense counsel present. The spectacle of the defendant seated alone at counsel table while, on the other side, the attorney for the government elicits inculpatory evidence from a witness must have been a lopsided sight indeed. It may have led the jurors to conclude that the defendant’s own advocate did not believe that the defendant’s case was worthwhile. And it may have made the jurors see the trial judge as presuming the defendant was guilty. After all, if the judge does not care whether defense counsel is there, why should the jury?
Reinitiating the trial without defense counsel present also may have done irreparable damage to the jury’s perspective of defense counsel. It is well-documented that jurors’ perceptions of attorneys influence verdicts. In this ease, there is no positive association that could come from defense counsel not being present when the government elicited incriminating testimony from a key witness.
Faced with these considerations, how can we quantify and dismiss as harmless beyond reasonable doubt the impact that defense counsel’s absence had on the jury when it saw the district court resume the trial without defense counsel present, leaving the defendant to fend for himself? There is no way to quantify the extent of this error’s effects on the jury without speculating. We cannot assess it from a transcript. “The idea that a reviewing court can assess from a cold transcript the prejudice caused by counsel’s absence completely ignores the role that counsel’s physical presence in the courtroom actually plays.” David A. Moran, Don’t Worry, I’ll Be Right Back: Temporary Absences of Counsel During Criminal Trials and the Rule of Automatic Reversal, 85 Neb. L. Rev. 186, 207 (2011). This is because “the reviewing court cannot possibly discern from the transcript how the jury ... re *1237 acted non-verbally to the proceedings that occurred in counsel’s absence. During an ongoing trial, real-world trial counsel make crucial decisions based on the reaction of the jury to testimony, evidence, argument, and other courtroom proceedings.” Id; see also United States v. Zeigler, 994 F.2d 845, 849 (D.C. Cir. 1993).
Of course, the Majority states, “[w]e know what counsel did, and did not do, after he heard those questions asked and answered.” Maj. Op. at 1155. Similarly, one of my colleagues concurs in the affirmance because he believes the defendant received a “do-over.” Jordan, J., concurring, at 1208-09. But we do not know what counsel would have done if he had been there the first time the evidence was introduced; we only know what he did the second time. It matters neither whether the substance of the evidence was repeated and subjected to cross-examination when counsel returned nor that counsel failed to object when he ultimately heard the evidence introduced.[6] What matters is that counsel did not have the opportunity in the first instance to, inter alia, observe the witness as he testified, note the impact of the inculpatory evidence on the jury, or attack the credibility of the witness with a prior inconsistent statement. Plus, hearing the same inculpatory evidence twice is hardly curative — it might even make matters worse.
Additionally, the suggestion that we know what counsel did and the theory that counsel got a “do-over” both fail to account for the harm inflicted by proceeding without counsel in front of the jury. Any “do-over” could not fix the fact that the jury had just witnessed the trial judge start up proceedings again without defense counsel present. We do not know the effect that seeing the criminal defendant sitting at counsel’s table alone had on the jury; we do not know what the jurors must have thought when they watched the judge reconvene trial without waiting for defense counsel to arrive, or what impression of guilt may have attached when the judge appeared not to care whether defense counsel was there. Thus, not only do we not know what counsel would or would not have done but also it is inaccurate to claim that the defendant got a “do-over” — in either practical or legal terms — simply because evidence was repeated for a second time when his counsel came back into the courtroom.[7]
This problem is precisely why errors such as this are structural in nature. As the Supreme Court has explained, when “the scope of a violation ... cannot be discerned from the record, any inquiry into its effect on the outcome of the case would be purely speculative.” Satterwhite, 486 U.S. at 256, 108 S.Ct. at 1797; see also Holloway, 435 U.S. at 490-91, 98 S.Ct. 1173. Since we cannot accurately assess *1238 the effect of the absence of defendant’s counsel during the admission of inculpato-ry evidence, fundamental fairness requires a new trial.
B.
The Supreme Court’s decision in Cronic also compels a finding that the violation here is structural error. In Cronic, the Court announced that structural error occurs if counsel is denied at a “critical stage” in the proceedings. This is because “a trial is unfair if the accused is denied counsel at a critical stage of his trial”; in the absence of counsel, “a serious risk of injustice infects the trial itself.” Cronic, 466 U.S. at 656, 659 & n.25, 104 S.Ct. at 2045, 2047 & n.25 (internal quotation marks omitted). The error at bar is a Cronic error because the stage of trial in which the prosecution offers inculpatory evidence is a critical stage in the proceedings against the defendant.[8]
A critical stage is one that holds “significant consequences for the accused.” Bell v. Cone, 535 U.S. 685, 696, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002). To determine whether a stage in the proceedings meets this definition, we again look to the structural-error factors: potential for prejudice and the necessity of speculation. We must “analyze whether potential substantial prejudice to [a] defendant’s rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.” See Wade, 388 U.S. at 227, 87 S.Ct. at 1932; see also Cronic, 466 U.S. at 656, 104 S.Ct. at 2045.
The question governing every criminal trial is whether enough inculpatory evidence exists to find a defendant guilty beyond a reasonable doubt. Considering this basic premise, the prosecution’s submission of inculpatory evidence is essential to the trial process. Adding to its description of a “critical stage” as one that holds “significant consequences for the accused,” Bell, 535 U.S. at 696, 122 S.Ct. at 1851, the Supreme Court has clarified that “critical stages” include “proceedings between an individual and agents of the State (whether ‘formal or informal, in court or out’) that amount to ‘trial-like confrontations,’ at which counsel would help the accused in ‘coping with legal problems or ... meeting his adversary,’ ” Rothgery v. Gillespie Cty., 554 U.S. 191, 212 n.16, 128 S.Ct. 2578, 2591 n.16, 171 L.Ed.2d 366 (2008) (alteration in original) (citations omitted).
There is no stage during criminal proceedings more “trial-like” than when the prosecution offers evidence that helps convince the jury the defendant is guilty. The submission of inculpatory evidence is the stage of trial that matters. It is when “the core purpose of the counsel guarantee” is necessary, “to assure ‘[ajssistance’ at trial, when the accused [i]s confronted with both the intricacies of the law and the advocacy of the public prosecutor.” See United States v. Ash, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). At this stage, the potential for prejudice is at its highest point, and the effects of counsel’s absence are unquantifiable.
*1239 I can think of no more critical a stage in criminal proceedings than the admission of inculpatory evidence against a defendant. Several of our sister circuits agree. See, e.g., United States v. Hamilton, 391 F.3d 1066, 1070-71 (9th Cir. 2004) (finding that “the portions of the consolidated proceedings in which evidence relating to [the defendant’s] case” was presented constituted a critical stage, and the absence of defense counsel at such a stage resulted in structural error); Olden v. United States, 224 F.3d 561, 568 (6th Cir. 2000) (“When the government presents evidence probative of a defendant’s culpability in criminal activity, or evidence that further implicates a defendant in criminal conduct, that portion of a criminal trial is sufficiently critical to the ultimate question of guilt to trigger the protections of Cronic.”); Burdine v. Johnson, 262 F.3d 336, 347 (5th Cir. 2001) (en banc) (“[T]he presentation of evidence against a defendant is a critical stage of a criminal proceeding.”); see also Green v. Arn, 809 F.2d 1257, 1263 (6th Cir.) (“It is difficult to perceive a more critical stage of a trial than the taking of evidence on the defendant’s guilt.”), vacated on other grounds, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987) (mem.), reinstated, 839 F.2d 300 (6th Cir. 1988); United States v. Russell, 205 F.3d 768, 771-72 (5th Cir. 2000). Nevertheless, in the Majority’s holding today, we become the first circuit to find that, in a single-defendant trial, the complete absence of the defendant’s sole counsel during the introduction of inculpa-tory evidence does not constitute structural error.
Although several of our sister circuits agree that the introduction of inculpatory evidence against a defendant is a critical stage, none of them have encountered circumstances as egregious as those presented here. For example, Olden, Green, and Russell addressed instances where the attorney for one defendant in a multi-defendant trial was absent and the court, counsel, and parties operated under the erroneous assumption that the continued presence of a codefendant’s attorney was adequate to protect the defendant’s right to counsel. In each case, a co-defendant’s counsel was available to assist the defendant with cross-examination or to represent the defendant’s interests otherwise, but the appellate court nonetheless found that reversal was required under the Sixth Amendment.[9]
In Olden, the Sixth Circuit concluded that remand was warranted in a multide-fendant, multi-attorney trial even when a co-defendant’s counsel agreed to — and did — stand in for the defendant’s counsel during an absence. See Olden, 224 F.3d at 568-69. Earlier, in Green, the Sixth Circuit reversed when confronted with defense counsel’s temporary absence in a multi-defendant trial, see 809 F.2d at 1263-64, and even the sole dissenting judge (who would not have reversed based on structural error) noted that his view would be different if he had been presented with the “extreme” facts in the case before us now, see id. at 1265 (Boggs, J., dissenting). Judge Boggs wrote: “The facts of [Green] are a long way from, for an extreme example, taking of direct testimony against a single defendant whose counsel is absent.” Id. And, in Russell, counsel for one of the defendant’s sixteen co-defendants volunteered to sit in on behalf of the defendant’s absent counsel and the court instructed the government not to call any witness relevant to the defendant during his coun *1240 sel’s absence. See 205 F.3d at 769-70. Yet the Fifth Circuit still found structural error since potentially inculpatory evidence was offered while the defendant’s counsel was absent. See id. at 772-73.
Although the cases on which the Majority relies reached the opposite result, those cases are distinguishable from the present case because none involved a single defendant deprived of his sole counsel. See Sweeney v. United States, 766 F.3d 857, 858-59 & n.2 (8th Cir. 2014), cert. denied, — U.S. -, 135 S.Ct. 1841, 191 L.Ed.2d 723 (2015) (mem.); United States v. Raid, 502 F.3d 43, 44-45 (2d Cir. 2007) (per curiam). In fact, in Raid, there were so many defense attorneys and co-defendants that counsel’s “alleged trial absence” was not “noted anywhere in the trial record — not by the able district judge, not by the attorney involved, not by fellow defense attorneys, not by the prosecutor, and not by [the defendant] himself.” See 502 F.3d at 44-45.[10] This is clearly different from the circumstances here; it strains credulity to claim that no one noticed the sole defendant sitting entirely alone at counsel’s table.
In sum, several of our sister circuits have held that even potentially inculpatory evidence introduced against a defendant during a multi-defendant, multi-counsel case, while that defendant’s counsel was absent, constitutes structural error. And those circuits that disagree have not faced the circumstances we encounter here. Here, the trial judge, defense attorney, and defendant received no assurances that another attorney was looking out for the defendant’s interests. No co-defendant’s attorney sat at the table with the defendant, the presence of whom could mitigate the potential for prejudicial effect in the eyes of the jury — instead, he sat alone. Nonetheless, the Majority concludes that directly inculpatory evidence introduced against a defendant in a single-defendant, single-counsel case while defense counsel is absent constitutes harmless trial error.
Regardless of what other circuits have done, the Supreme Court has indicated that it matters whether the evidence presented during counsel’s absence directly inculpated a sole defendant. In Woods v. Donald, the Sixth Circuit granted a petitioner habeas relief after potentially “indirectly inculp[atory]” evidence was introduced against him in the absence of defense counsel. See 575 U.S. -, -, 135 S.Ct. 1372, 1377, 191 L.Ed.2d 464 (2015) (per curiam). The Supreme Court reversed, explaining that, because the Court had never decided the specific question in that case — whether testimony about co-defendants is a critical stage requiring the presence of counsel under Cronic — the Sixth Circuit erred in ruling that the state court of appeals’ decision was contrary to a Supreme Court holding. See id. at 1377. Under the deferential standard for federal habeas review, “[w]ithin the contours of Cronic, a fairminded jurist could conclude that a presumption of prejudice is not warranted by counsel’s short absence during testimony about other defendants where that testimony was irrelevant to the defendant’s theory of the case.” Id. at 1377-78. However, in so holding, the Court emphasized the distinction relevant here: “The relevant testimony was not merely ‘testimony of a government witness’; it was prosecution testimony about other defendants.” See id. at 1377 (noting *1241 that “the Sixth Circuit framed the issue at too high a level of generality”). Clearly, this is an important distinction.[11]
[[Image here]]
Supreme Court instruction as to what constitutes a critical stage, guidance from other circuits, and a basic understanding of how criminal trials work — the heart of which is when the prosecution introduces evidence against the defendant to prove his guilt — all dictate the conclusion that the admission of directly inculpatory evidence against a defendant is a critical stage of the trial. The deprivation of counsel during this critical stage is a constitutional error, “and no amount of showing of want of prejudice w[ill] cure it.” See Cronic, 466 U.S. at 659, 104 S.Ct. at 2047.
II.
The Majority fails to adequately "account for the key features of the error at issue. In an effort to quantify the unquantifiable, the Majority disregards the potential for prejudice, focuses on the amount of time defense counsel was absent, and adopts a novel, hypertechnical approach to “stages” that inverts and undermines the constitutional inquiry we are obligated to perform.
A.
In disregarding the potential for prejudice here, the Majority conflates the constitutional analysis. To determine whether an error is structural or subject to harmless-error analysis, we must first examine the potential for prejudice. If the potential for prejudice does not warrant a structural error finding, we then conduct an actual-prejudice/harmlessness inquiry. The Majority forgoes the threshold step in this process, first finding that the defendant’s criminal proceeding as a whole was not affected by counsel’s absence, and then concluding that structural error has not occurred. This semantic inversion evades the point. If a structural error occurs, it inherently undermines the fairness of a criminal proceeding as a whole by virtue of its occurrence. See Brecht, 507 U.S. at 629-30, 113 S.Ct. at 1717 (“The existence of [structural] defects — deprivation of the right to counsel, for example — requires automatic reversal of the conviction because they infect the entire trial process.” (footnote omitted)); United States v. Davila, 569 U.S. -, -, 133 S.Ct. 2139, 2149, 186 L.Ed.2d 139 (2013). That is the difference between a prejudice inquiry and a prejudice presumption. Structural errors, by definition, “pervade the entire proceeding.” See Satterwhite, 486 U.S. at 256, 108 S.Ct. at 1797; Cronic, 466 U.S. at 659 n.25, 104 S.Ct. at 2047 n.25 (“The Court has ‘uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.’ ” (emphasis added)).
But the Majority from the outset performs a harmless-error analysis. The Majority’s reasoning parallels the government’s reasoning in Gonzalez-Lopez, which *1242 the Supreme Court rejected. The government in Gonzalez-Lopez argued, “[a] trial is not unfair and thus the Sixth Amendment is not violated ... unless a defendant has been prejudiced.” See 548 U.S. at 145, 126 S.Ct. at 2562. The Court squarely rejected this construction, finding: “It is true enough that the purpose of the rights set forth in th[e Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair.” Id. Instead, the Sixth Amendment right to counsel during trial “commands, not that a trial be fair, but that a particular guarantee of fairness be provided” throughout the trial. Id. at 146, 126 S.Ct. at 2562.
Thus, the right at stake in this case is the right to defense counsel during the introduction of directly inculpatory evidence, “not the right to a fair trial” as a whole. See id. “[A]nd that right was violated because the deprivation of counsel was erroneous.” See id. In these circumstances, “[n]o additional showing of prejudice is required to make the violation ‘complete.’ ” See id.
B.
The Majority attempts to distinguish this case from others based on the amount of time counsel was absent, hanging its hat on a rigid comparison of the minutes that counsel was absent in relation to the length of time counsel was present. See, e.g., Maj. Op. at 1155-56 (“[T]he absence in Raid was nearly three times as long as the absence in Roy’s case....”); id. at 1156 (noting that, in Sweeney, there were “twice as many transcript pages of testimony and more than twice as many questions and answers as counsel missed in Roy’s case”). This mechanical focus on minutes and seconds drives the Majority’s “critical stage” inquiry. And in considering the contours of structural error outside of the “critical stage” framework, the Majority sets forth a new test that turns on the length of a counsel’s absence: the “absence for a substantial portion of trial” test. See id. at 1160-66. The Majority’s mechanical, minutes-and-seconds approach is misplaced.
First, the Majority’s mechanical calculation is simply the wrong inquiry for the “critical stage” analysis. The connotation of “critical” is that it denotes a substantive inquiry — we must look to what was happening to see whether what occurred was important. The importance of the proceedings that counsel missed outweighs the amount of time that counsel was away. To simply look at the length of time and the number of transcript pages disregards what was critical about the stage of the proceedings relevant here — the introduction of directly inculpatory evidence. The rule from Cronic is not that reversal is required when counsel is absent from a “some-time-longer-than-seven-minute stage in the proceedings.” The rule is that reversal is required when counsel is absent at a critical stage in the proceedings. The Supreme Court certainly could have said that reversal is required when counsel is absent for a “lengthy period of time,” or for “prolonged periods,” if length of time was the key factor in the inquiry into whether a stage is a critical stage. But there is no support for the Majority’s treatment of length of time as all but dispositive.
Second, the Majority’s “length of time” distinction is not enough to remove the circumstances here from structural error. The Majority focuses on the length of time to try to distinguish relevant cases from our sister circuits, engaging in a tedious line-drawing exercise while emphasizing that seven minutes in a lengthy trial is not a substantially long period. I agree that seven minutes is not all that long. But it is long enough to permit incriminating evidence to be admitted, and it is long enough *1243 to create an attendant risk of substantial prejudice. See Olden, 224 F.3d at 568 (“[W]hen the government presents evidence probative of a defendant’s culpability in a criminal activity, or evidence that further implicates a defendant in criminal conduct, that portion of a criminal trial is sufficiently critical to the ultimate question of guilt to trigger the protections of Cronic.”); Russell, 205 F.3d at 772 (“[F]or [the defendant] to be without counsel as the probability of his guilt increased during the government’s presentation of evidence against his co-conspirators is unacceptable.”).
In fact, illustrating the shortcomings in the Majority’s “length of time” distinction — as well as the shortcomings in the Majority’s “absence for a substantial portion of trial” test — a one-minute absence of counsel could be enough to constitute structural error. Consider an expert witness in a homicide trial who takes the stand and opines that the fingerprints on the murder weapon belong to the defendant, while counsel for the defendant has not yet returned from lunch. The government introduces the expert testimony in less than one minute during defense counsel’s absence. That, in my estimation, is long enough to warrant application of the Cronic reversal rule because the expert opinion evidence is directly inculpatory, and the probability of the defendant’s guilt dramatically increases during that one-minute span. See Russell, 205 F.3d at 772. Furthermore, even if the testimony is repeated and subjected to cross-examination when defense counsel returns, there is no way to measure how much the initial opinion influenced the jury’s consideration of the defendant’s guilt.
Under the Majority’s inverted analysis, we might conclude that the one-minute absence was an insufficient “stage” or was not for a “substantial portion of trial” because it was so short and the other evidence so damning that the defendant surely would have been found guilty anyway. That conclusion, however, would be premised on pure speculation as to the effects of the admitted testimony — speculation that indicates structural error. Therein lies the problem with applying a harmless-error analysis to an absence of counsel during the admission of inculpatory evidence.[12]
Again, structural error results in a presumptive-prejudice rule — we presume prejudice when structural error occurs and thus do not perform the prejudice inquiry *1244 required for harmless-error review. The Majority rewrites Cronic (and structural error, writ large) to make exceptions— when the absence is not too lengthy, when the evidence is so great — and instead applies the prejudice test that the Supreme Court rejected in Cronic. To suggest that the specific length of time that counsel is absent perfectly correlates with the impact of potential lost opportunities to advocate for his client is deceptively simplistic. It disregards what the Court has recognized as the “myriad aspects of representation,” resulting in countless unknowable possibilities that may have been permitted or prevented by the participation of an attorney. Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. at 2564. Even more importantly, to say that the length of counsel’s absence is short and, consequently, not prejudicial bypasses the threshold inquiry — whether the error is trial error, permitting such an analysis in the first place, or structural error, prompting a presumption of prejudice.[13]
C.
Consistent with its mechanical approach to structural-error analysis, the Majority creates a hypertechnical “critical stage” standard that elevates form over substance. The Majority makes an extended argument that a “critical stage” is “a qualitatively distinct, discrete, and separate phase or step of a criminal proceeding” or “a self-contained proceeding or a discrete and separately identifiable portion of a larger proceeding.” Maj. Op. at 1146-48. However, my understanding of the critical-stage concept set forth by the Supreme Court recognizes that there are defining moments in any trial that pervade the remainder of the proceedings, not just isolated, discrete phases or steps. In Cronic, the Court cited several cases of Sixth Amendment structural error that involved defining moments, such as counsel’s lost opportunity to make a statement, see Herring, 422 U.S. at 865, 95 S.Ct. at 2556-57; the defendant’s inability to converse with counsel during a recess, see Geders, 425 U.S. at 91, 96 S.Ct. at 1336-37; and deprivation of the defendant’s right to consult with counsel to determine when to testify at trial, see Brooks, 406 U.S. at 612-13, 92 S.Ct. at 1895.[14] Those cases did not involve the denial of counsel during a “discrete and separately identifiable” phase of erimi- *1245 nal proceedings; they involved the denial of counsel “at a critical stage of ... trial.” See Cronic, 466 U.S. at 659, 104 S.Ct. at 2047 (emphasis added). Accord Gregg v. United States, 754 A.2d 265, 268-71 (D.C. App.2000) (holding that, where defense counsel is absent for even a portion of voir dire, reversal under Cronic is required in the absence of a waiver).
III.
Certainly, the Majority and I have strikingly different approaches to understanding the issue before us. While the Majority obliquely takes into account the facts of the crime, the potential outcome of treating this as structural error, et cetera, I see this as a strictly constitutional question about process, fairness, and the integrity of the trial. We are not instructed to consider what could happen with a different criminal defendant in a different criminal trial. And we are not instructed to consider the outcomes that might result from our proper application of the law. When I remove the impermissible factors that are skewing the Majority’s analysis, I reach a very different result.
A conspicuous example of the divergence between our approaches to this case can be seen in the Majority’s hypothetical regarding Manuel Noriega. The Majority’s response to the incalculable negative impact of having the trial proceed without the defendant’s sole counsel there is to fearfully query, “but what about (former military dictator) Manuel Noriega?” See Maj. Op. at 1159-60. Well, what about him? Presumably, if irreparable constitutional error occurred in a trial — whether it be in the trial of Manuel Noriega or anyone else — we would reverse and remand for proceedings consistent with what the Constitution requires. It is simply what we, as judges and guardians of the Constitution, are required to do. No matter how bad the defendant; no matter how egregious the crime; no matter how long the defendant’s trial lasted. Neither our views of the defendant nor our policy concerns about the costs of a second trial are relevant.
It is easy to focus on the disturbing nature of this particular defendant’s offense to avoid reaching the constitutionally required result. But it is in precisely cases such as these that we must vigilantly ensure we are adhering to our obligation to uphold the same protections for all criminal defendants, rather than being swayed by emotions or public influence. The extent of our commitment to the Constitution and the protections it guarantees can be measured by our treatment of the most despised defendants. To be sure, these individuals may not elicit our pity and may ultimately deserve harsh punishment, but the constitutional processes that the Framers put in place are there to protect everyone, including people accused of the gravest and most serious crimes. It is in those instances that we are most likely to react inflammatorily by disregarding due process. That is precisely why it is in those instances that our adherence to constitutional protections must be resolute.[15]
The Sixth Amendment guarantee of the right to counsel does not apply on a sliding scale based on the gravity of the defendant’s offense. We are not called upon to judge the character of the individual but rather the fairness of the process. Thus, the lurid details of this defendant’s offense serve only to distract from the constitutional question this appeal raises: whether, *1246 in the trial of a single defendant represented by a single lawyer, it constitutes structural error for the trial judge to resume proceedings without defense counsel present, leaving the defendant unaided in the presence of the jury while the prosecution presents directly inculpatory evidence. I conclude that it does.
IV.
The Supreme Court has given explicit instructions for remedying structural error: remand for new, constitutionally-compliant proceedings. See, e.g., Cronic, 466 U.S. at 659 & n.25, 104 S.Ct. at 2047 & n.25. The nature of the right at issue — one that is “so basic to a fair trial” that it cannot be treated as harmless error — and the characteristics of structural error itself — the effects of which cannot be readily measured and are likely to be substantially prejudicial — mandate this result. See Chapman, 386 U.S. at 23, 87 S.Ct. at 827-28; Brecht, 507 U.S. at 629-30, 113 S.Ct. at 1717. Immediate reversal and remand for a new trial is still a “far more desirable” result than for the error to come up in a “spin-off of collateral proceedings that seek to probe murky memories.” Stano, 921 F.2d at 1172 (Tjoflat, J., dissenting) (quoting Boykin, 395 U.S. at 244, 89 S.Ct. at 1713). There is no need for us to invite additional litigation when we may resolve the issue now.[16]
The Supreme Court recently reaffirmed that reversal is the only constitutionally viable remedy upon a finding of structural error. In Williams, the Court ruled it was structural error for the Supreme Court of Pennsylvania to consider a case with a judge on the panel who should have re-cused, and thus, the Court reversed and remanded the case to “[a]llo[w] an appellate panel to reconsider [the] case without the participation of the interested member.” See 136 S.Ct. at 1909-10. Although the Supreme Court of Pennsylvania already “entertained [the defendant’s] motion for reargument without [the biased judge], who had retired months before the court denied the motion,” id. at 1922 (Thomas, J., dissenting), the Court was not persuaded that such a pre-existing “do-over” mattered — a new appellate panel had to reconsider the issue. The rule is therefore clear: new proceedings are in order. In Williams, the defendant was entitled to a new hearing. The defendant here is entitled to a new trial.[17]
Finally, even were harmless-error review to apply, I would find that reversal is required because the error in this case was not “harmless beyond a reasonable doubt.” See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. The admission of inculpatory evidence against a criminal defendant while his counsel is absent from the courtroom is a serious constitutional error. The prejudicial effects of subjecting a defendant to such a one-sided prosecutorial campaign are immeasurable. Here, that error eviscerated the guarantee of fairness and reli *1247 ability that the adversarial process provides, and it undoubtedly had a serious impact on the jury’s views of the court, the defendant, and defense counsel.
V.
There has also been extensive discussion amongst my colleagues about who was at fault in permitting this error to occur. For instance, Judge Tjoflat in his concurrence suggests that, if there was no one at fault, it is unclear how the Majority can assess the error under our current harmless-error precedents. If Judge Tjoflat is correct, then this ambiguity additionally signals that the defect at issue constitutes structural error.
But if this discussion is really a question about on whom we should place the burden that constitutional rights remain inviolate, then amongst the defendant, defense attorney, and the trial judge, it is the judge who properly shoulders that burden. The Supreme Court has “consistently recognized the important role the trial judge plays in the federal system of criminal justice.” Geders, 425 U.S. at 86, 96 S.Ct. at 1334. That is because “the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.” Quercia v. United States, 289 U.S. 466, 469, 53 S.Ct. 698, 698-99, 77 L.Ed. 1321 (1933); see Rosenbaum, J., concurring, at 1216 (“[T]he court alone enjoys control over the trial proceedings, including when to start, stop, and resume trial. And trial simply cannot proceed without the court’s actions in allowing it to do so.”). The trial judge must therefore see to it that defense counsel is present before permitting the introduction of inculpatory evidence in a one-defendant, one-defense-counsel case, and, if the judge fails to do so, reversal is warranted.[18] The defendant would not simply go free; remand would occur for a fair trial to take place.
Such “a per se rule of prejudice in these kinds of cases may be the most efficient mechanism for preventing miscarriages of justice.” See Stano, 921 F.2d at 1172 (Tjoflat, J., dissenting). It “creates a strong incentive for the courts at the ... trial level to ensure that a defendant is accorded meaningful representation. A per se rule of prejudice will thus sharpen the trial court’s sense of responsibility in discharging its duties at the first stage.” Id.
That sense of responsibility needs sharpening. By reconvening the trial early and permitting the introduction of incriminating evidence without confirming that defense counsel was present, the district court in this case failed to “ensure[ ] to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process.” See Herring, 422 U.S. at 858, 95 S.Ct. at 2553. Moreover, the deprivation of defense counsel during the introduction of inculpatory evidence is not an isolated incident in the district court judge’s courtroom. In a different criminal jury trial, the same judge resumed proceedings in the absence of defense counsel and the defendant, and the judge then allowed the government to elicit incriminatory evidence from one of its witnesses.[19]
*1248 Here, regardless of the judge’s intentions, the defendant’s constitutional rights were violated when the judge began proceedings -without counsel present. When, in a single-defendant, single-defense-counsel trial, a judge absentmindedly allows the government to offer inculpatory evidence while defense counsel is out of the courtroom, the mistake results in a violation of the defendant’s Sixth Amendment right to counsel. And, alternatively, when a judge is aware of defense counsel’s absence in such a case and intentionally begins trial without counsel in order to cure attorneys of tardiness, the defendant is deliberately deprived of counsel in violation of the Sixth Amendment. I am not willing to suggest that trial judges can send such a message to attorneys at the expense of a defendant’s constitutional rights. An attorney’s failure to be present should result in sanctions against the attorney, not constitutional violations against the defendant that strike a blow to the integrity of the trial process.
VI.
We have a duty not only to ensure that our legal proceedings are fair and impartial but also to make certain that they “appear fair to all who observe them.” Indiana v. Edwards, 554 U.S. 164, 177, 128 S.Ct. 2379, 2387, 171 L.Ed.2d 345 (2008) (internal quotation marks omitted). As the Supreme Court emphasized in Cronic, “ ‘[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a ease will best promote the ultimate objective that the guilty be convicted and the innocent go free.’ ” 466 U.S. at 655, 104 S.Ct. at 2045 (quoting Herring, 422 U.S. at 862, 95 S.Ct. at 2555). Indeed, the right to counsel is the most important right a criminal defendant has and the best means of ensuring a fair trial; “[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.” Id. at 654, 104 S.Ct. at 2044 (internal quotation marks omitted).
To put it plainly, defense counsel is a key participant in a criminal trial. He is both his client’s mouthpiece and his client’s confidant. Counsel’s role includes viewing, interpreting, and responding to the demeanor of the other trial participants, including the jurors, witnesses, opposing party, and presiding judge. His ability to confer with his client about and develop an ongoing strategy for the case depends on these observations. Moreover, defense counsel influences the conduct and perceptions of other key participants by his presence and actions. By finding that defense counsel’s absence during the introduction of inculpatory evidence against his client is harmless error, the Majority devalues defense counsel and the important role defense counsel plays in ensuring the integrity of the judicial process.
We all agree that the defendant’s trial in this case was imperfect — his Sixth Amendment right to counsel was violated when the trial proceeded without his only counsel present. But, most importantly, the trial was also fundamentally unfair. The defendant was denied counsel while the prosecution admitted inculpatory evidence against him — evidence that was used to convict and sentence him to life in prison. When a district court allows substantive, inculpatory evidence against a criminal defendant in the absence of any counsel and in the presence of the jury, I can neither quantify the effects of the error nor de *1249 clare that the error was harmless beyond a reasonable doubt.
The absence of defense counsel in these circumstances constitutes “constitutional error of the first magnitude, and no amount of showing of want of prejudice w[ill] cure it.” Id. at 659, 104 S.Ct. at 2047 (internal quotation marks omitted). Such a violation undermines not only the defendant’s individual constitutional rights but “also the accuracy of the truth-seeking process and thus the integrity of the criminal justice system itself.” See Stano, 921 F.2d at 1170-71 (Tjoflat, J., dissenting). Affirming this conviction would abdicate my duty both to protect the adversarial process and to preserve the appearance of fairness. See Gonzalez-Lopez, 548 U.S. at 146, 126 S.Ct. at 2562 (stating that the right to counsel serves to provide not simply a fair trial but rather “a particular guarantee of fairness”). Because the defendant received a trial that was neither perfect nor fair, I respectfully dissent.

. Gonzalez-Lopez involved the absence of a particular guarantee of fairness — the right to have counsel of one's choosing at trial. The Court held that the denial of the defendant’s choice of counsel resulted in a structural defect in the proceedings, requiring vacatur of the conviction. Gonzalez-Lopez, 548 U.S. at 152, 126 S.Ct. at 2566. In determining that the denial of counsel of one’s choosing implicates the constitutional guarantee of fairness, the Supreme Court indicated that counsel need not be entirely deprived in order to trigger the Sixth Amendment’s protection.
Consequently, Gonzalez-Lopez provides important foundation for this case: if the guarantee-of-fairness consideration was relevant where some counsel was present, just not the one chosen by the defendant, then surely here, where the defendant had no counsel present to protect his constitutional rights, the same guarantee-of-fairness consideration applies. Further, the defendant in this case selected a particular counsel to represent him, and then the court proceeded without that counsel. Thus, the denial of the defendant’s counsel at trial ipso facto denied the defendant the right to have present the counsel that he chose. For these reasons, the circumstances constituting structural error and requiring reversal in Gonzalez-Lopez are sufficiently analogous to the circumstances presented in this case. Cf. Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008) (per curiam) (citing Gonzalez-Lopez in describing Cronic structural error).

. From the outset, the Majority mischaracter-izes the error here as the erroneous admission of particular evidence at trial, which is an error amenable to harmless-error review. See, e.g., Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988). But the general admissibility of evidence introduced during defense counsel's absence is not the issue. Instead, the issue is that a criminal defendant’s sole defense counsel was absent while inculpatory evidence was admitted to the jury. Those are the circumstances that violated the defendant’s constitutional rights here; those are the circumstances that create "a serious risk of injustice.” See Cronic, 466 U.S. at 656, 659 n.25, 104 S.Ct. at 2045, 2047 n.25. Thus, Satterwhite s rule does *1232 not apply because the nature of the harm is not limited to the specific evidence that was erroneously introduced. See Rosenbaum, J., concurring, at 1218-19.

. The importance of the potential for prejudice inquiry also manifests in structural error cases outside of the denial-of-counsel context. Most recently, in a recusal case, the Supreme Court indicated that even a "potential for” or "risk of” bias was enough to constitute structural error. See Williams v. Pennsylvania, 579 U.S. -, -, 136 S.Ct. 1899, 1905-07, 195 L.Ed.2d 132 (2016) (noting that "the decision [of a prosecutor] to pursue the death penalty is a critical choice in the adversary process” and reversing based on the risk of bias when a non-recused judge who served as the supervising prosecutor participates in the subsequent judicial proceedings).

. That defense counsel received a report including the apparently erroneous date prior to trial does not mitigate the problem of defense counsel’s absence when this evidence was introduced live. Defense counsel could not know what the expert witness was going to say until he said it; thus, the inconsistencies in the live testimony remain problematic. Moreover, impeachment of live testimony has an unparalleled effect on trial proceedings.

. The Majority claims that "there is nothing unusual — or unusually difficult — about determining whether a failure to object, or a lost opportunity to object, to testimony was prejudicial or harmless.” See Maj. Op. at 1169. I am not so sure that a lost opportunity to object is the same thing as the failure to object — or so easily quantifiable. It seems to me that a lost opportunity to object is an altogether different problem, one that requires speculation to resolve. I also note that the Majority cites no case law supporting that a lost opportunity to object is in fact readily calculable. The cases cited instead deal with the more readily assessable failure to object, which, of course, lends itself to the deficient-performance analysis not at issue here. And further, here, it was a lost opportunity to impeach- — the effects of which could have pervaded the witness’s entire testimony.

. The Supreme Court has made clear that counsel's failure to object to the taking of evidence during his absence is irrelevant for purposes of determining whether structural error has occurred. See White, 373 U.S. at 60 n.*, 83 S.Ct. at 1051 n.* (failure of counsel to object to evidence obtained in violation of the right to counsel does not negate need for automatic reversal because “the rationale of [structural error precedent] does not rest ... on a showing of prejudice”). If the Supreme Court has held that an objection is unnecessary to warrant automatic reversal where counsel is present during the admission of the offending evidence, an objection is certainly unnecessary where counsel is not even present for the admission of the offending evidence.

. I emphasize that the “do-over” notion simply does not cure a structural defect. The problem with structural error is that it strikes a blow to the integrity of the process itself, calling into question the system put into place to guarantee fairness. The system does not get a "do-over,” even if one can accept that the defendant here did.

. As a threshold point, it is worth noting that defense counsel was actually absent from the proceedings. Cronic applies to even constructive denials of counsel, and much of the Supreme Court case law has focused on whether a defendant was constructively denied counsel due to defense counsel failures and, thus, whether the standard Strickland deficient performance inquiry is appropriate. See generally Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In contrast, this case is squarely removed from the Strickland deficient-performance line of inquiry because, here, defense counsel was denied by virtue of being physically absent. See Vines v. United States, 28 F.3d 1123, 1127 (11th Cir. 1994) (''Strickland assumes the presence of counsel and is therefore inapplicable in the absence of counsel context."). Contra Tjoflat, J., concurring, at 1189 & n.3.

. In Olden, the Sixth Circuit remanded for an evidentiary hearing in order to determine whether the defendant "voluntarily, knowingly, and intelligently waived” his Sixth Amendment rights, and held that if the defendant could establish that his rights were not properly waived, then a new trial was warranted per Cronic. See 224 F.3d at 569.

. The Majority’s reliance on Raid is also problematic because the Second Circuit in that case assessed the defendant's absence-of-counsel claim under Strickland — an analysis that even the Majority concedes is erroneous, see Maj. Op. at 1142 n.7 (citing Vines, 28 F.3d at 1127 ("Strickland assumes the presence of counsel and is therefore inapplicable in the absence of counsel context.”)).

. Woods informs my view, but it is not dis-positive. The Supreme Court stated that it was only addressing "the narrow context of federal habeas review,” not "the merits of the underlying Sixth Amendment principle." Woods, 135 S.Ct. at 1378 (internal quotation marks omitted). But, in the absence of binding precedent on this point, Woods offers valuable insight into the type of distinctions the Court may make if and when it takes such a case on direct review. One need only look to the relationship between, for example, Lawrence v. Texas and United States v. Windsor to understand how the Court’s disavowal of a rule in an earlier case may nonetheless inform a future holding. See United States v. Windsor, 570 U.S. -, -, 133 S.Ct. 2675, 2696, 186 L.Ed.2d 808 (2013); id. at 2709 (Scalia, J., dissenting) (discussing the Court’s earlier limitation of its holding in Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 2484, 156 L.Ed.2d 508 (2003)).

." Similarly, I am not persuaded by Judge Rosenbaum's conclusion that defense counsel's absence in this case was "de minimis.” As a practical matter, this approach falls into the same trap as does the Majority’s, by measuring "de minimis” in light of how long counsel was absent relative to time present instead of considering the substance of the evidence introduced. See Rosenbaum, J., concurring, at 1228 ("I would draw the line between trial-error absences and structural-error absences at the point where an absence lasts for more than ten minutes or 1% of the total ‘critical stages’ of trial.”). I believe we should determine whether structural error occurred by focusing on the potential for prejudice given the substance of what was introduced in counsel’s absence and whether we can assess the effects that flow from that absence, not a rigid measure of the minutes counsel missed.
In addition, as a legal matter, the de min-imis approach functions as an exception to the exception, which is an approach that has not been endorsed by the Supreme Court. In the absence of any statement that such an exception applies, I would decline to create it. Under Supreme Court precedent, "a constitutional error is either structural or it is not.” Neder v. United States, 527 U.S. 1, 14, 119 S.Ct. 1827, 1836, 144 L.Ed.2d 35 (1999). If the error can be readily quantified and deemed de minimis, then it is trial error, not structural error. Sullivan, 508 U.S. at 281-82, 113 S.Ct. at 2083 (noting that structural errors are "necessarily unquantifiable and indeterminate”); Fulminante, 499 U.S. at 309, 111 S.Ct. at 1265 (noting that structural errors "defy analysis by harmless-error standards”).

. Several of the highest state courts to consider this question have similarly declined to focus on the overall length of time that counsel was absent, instead looking to the substance of what occurred during the absence. The Pennsylvania Supreme Court found automatic reversal under Cronic was warranted when defense counsel was absent for a brief conversation between the court and a juror. See Commonwealth v. Johnson, 574 Pa. 5, 828 A.2d 1009, 1015 (2003). Similarly, the South Carolina Supreme Court presumed prejudice and reversed under Cronic where defense counsel was temporarily absent during the testimony of one of the prosecution witnesses. See McKnight v. State, 320 S.C. 356, 465 S.E.2d 352, 359-60 (1995).

. The Cronic Court stated:
The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. See, e.g., Geders v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); Brooks v. Tennessee, 406 U.S. 605, 612-613, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (per curiam); Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); Williams v. Kaiser, 323 U.S. 471, 475-476, 65 S.Ct. 363, 366, 89 L.Ed. 398 (1945).
Cronic, 466 U.S. at 659 n.25, 104 S.Ct. at 2047 n.25.

. Lest there be any confusion, I am not saying that people accused of terrible crimes are entitled to more constitutional protections. Rather, I am noting that the terrible crimes of which someone is accused should not be used to detract from the legal merits of his case or to avoid applying basic constitutional requirements. Such a defendant deserves no more— and no less — constitutional protections than any other defendant.

. This case is before us on direct appeal— the best time to correct the error. Cf. Davis v. Ayala, 576 U.S. -, -, 135 S.Ct. 2187, 2213 n.1, 192 L.Ed.2d 323 (2015) (Sotomayor, J., dissenting), reh’g denied, — U.S. -, 136 S.Ct. 14, 192 L.Ed.2d 983 (2015) (mem.).

. My concurring colleagues hope that "de minimis” errors or "do-overs” do away with or transform structural error into trial error. By couching their analyses in these terms, they conveniently avoid the result that the Supreme Court has told us structural error requires. The Williams Court could have articulated an exception to structural error’s automatic reversal rule under any of these theories, as highlighted by Justice Thomas in his dissent, but it instead reinforced the automatic reversal rule. Given the Supreme Court’s clear instructions on the result required, I am not persuaded that we can sidestep the trial error/structural error dichotomy and the result mandated upon a finding of structural error.

. As I previously wrote, I am "unpersuaded that United States District Judges should be excused from the less than onerous burden of ensuring that the defendant’s lawyer is seated at counsel table, next to his client, or is somewhere in the courtroom when the government seeks the admission of incriminating evidence.” United States v. Roy, 761 F.3d 1285, 1298 (11th Cir.), reh'g en banc granted, opinion vacated, 580 Fed.Appx. 715 (11th Cir. 2014) (mem.).

. See Transcript of Jury Trial, App. at 125:3-5, United States v. Garcia, No. 14-11845 (11th Cir. Dec. 11, 2014) (trial judge refusing to permit reading of transcript of missed testimony to defense counsel even after prosecution’s request). I would take judicial notice of *1248 this fact. See Fed. R. Evid. 201(b); United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).